[No. B099018. Second Dist., Div. Four. Aug. 5, 1997.]

ZELDA, INC., et al., Plaintiffs and Appellants, v.
NORTHLAND INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Philip D. Brent for Plaintiffs and Appellants.

Hollins & Rice, Byron S. Hollins, Andrea Lynn Rice and Kim A. Hayashi for Defendant and Respondent.

OPINION

BARON, J.—The trial court granted summary judgment on appellants' complaint for breach of insurance contract and bad faith against respondent Northland Insurance Company (hereafter Northland). We affirm.

### FACTS

The following facts are not in dispute:[1] Appellant Zelda, Inc. (hereafter Zelda), operates a restaurant known as the Lodge in North Hollywood. During the pertinent period, appellants Glenn D. Taylor and Stuart A. Zinn were Zelda's officers and directors, and each owned one-half of Zelda's capital stock.

On June 4, 1990, respondent Northland issued a one-year commercial insurance policy to Zelda. The policy provided coverage for, inter alia, bodily injury and personal injury liability, and contained an exclusion concerning bodily injury arising from assault or battery. This policy was subsequently renewed and was effective through June 4, 1992.

On January 5, 1992, police officers filed a report about an alleged incident at the Lodge on that date. The report states that when Dino Pascale

---

[1]Some of these facts are found in the separate statements of fact filed in connection with appellants' cross-motion for summary adjudication, rather than in the separate statements associated with Northland's motion for summary judgment. Because appellants' opposition to Northland's motion argued that the additional facts raised in connection with their cross-motion were dispositive on Northland's motion, we review these facts in determining whether Northland carried its burden on summary judgment. (See *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 750-751 [41 Cal.Rptr.2d 719].)

In addition, Northland requested the trial court take judicial notice of the underlying superior court action between Felix Trujillo and appellants. We hereby take judicial notice of this file. (See Evid. Code, § 459.)

announced last call at 1:45 a.m., Felix Trujillo refused to give up his drink and attempted to punch Pascale, who then defended himself by punching Trujillo.

On January 10, 1992, an attorney representing Trujillo wrote a letter to appellants stating that Trujillo had a claim for injuries and damages sustained during the January 5 incident. Appellants forwarded this letter to Northland. On March 16, 1992, Northland responded that it would not indemnify or defend appellants concerning Trujillo's claim, citing the policy exclusion concerning assault and battery.

On March 16, 1992, Trujillo's attorney again wrote to appellants, alleging the following facts: "For no reason whatsoever, your employee threw Felix Trujillo to the ground. Once Mr. Trujillo was on the ground, your employee kicked Mr. Trujillo in the mouth. As a result, Mr. Trujillo suffered a severe laceration to his lower lip and chin. Further, Mr. Trujillo's upper two front teeth were kicked out. As a result of his injuries, Mr. Trujillo suffered, and still continues to suffer, great pain. In addition, Mr. Trujillo suffers from severe and extreme emotional distress as a result of the beating." The letter further alleged that appellants had failed to ensure the safety of an invitee on their premises, had negligently hired and supervised an employee, were vicariously liable for the intentional tort of their employee, and were liable for the emotional distress intentionally and negligently inflicted by their employee.

On May 6, 1992, counsel for appellants forwarded the March 16 letter to Northland, seeking indemnification and a defense because Trujillo's claim was "grounded on negligence" (italics omitted) and was "asserted on a respondeat superior theory." Northland denied this request on May 29, 1992, again citing the policy's exclusion concerning assault and battery.

On June 18, 1992, Trujillo filed a complaint containing claims for premises liability, negligence, intentional tort, and punitive damages against Zelda, Taylor, and Dino Pascale, who is alleged to be the "negligently hired, trained, and supervised employee and agent" of Zelda and Taylor who beat Trujillo. Under each claim, the complaint recited the factual allegations asserted in the March 18 letter to appellants.

On August 31, 1992, Trujillo filed a first amended complaint against Zelda, Taylor, and Zinn containing claims for assault and battery, intentional infliction of emotional distress, negligent hiring, training and supervising, negligent infliction of emotional distress, and punitive damages. These claims alleged that appellants were liable for the conduct of those persons

who assaulted and battered Trujillo, or who "negligently assaulted . . . and battered" Trujillo.

On September 16, 1992, appellants' counsel forwarded the first amended complaint to Northland, requesting reconsideration of its prior decision. However, Northland denied, and continues to deny, that it had a duty to defend or indemnify appellants.

On November 25, 1992, Trujillo filed a second amended complaint against appellants and Pascale containing claims for assault and battery, negligent hiring, supervising and retaining of employee, and punitive damages. Trujillo eventually dismissed his intentional tort claims against appellants, and settled his action against them in October 1993.

### RELEVANT PROCEDURAL HISTORY

On October 13, 1993, appellants filed their complaint against Northland for breach of contract, bad faith, fraud and deceit, negligent and intentional infliction of emotional distress, and declaratory relief. On August 1, 1995, Northland filed its motion for summary judgment, citing the assault and battery exclusion and contending that it had no duty to indemnify or defend appellants under the policy in the Trujillo action. On October 6, 1995, appellants filed their motion for summary adjudication of issues, contending that Northland had a duty to defend appellants in the Trujillo action.

Following a hearing on October 27, 1995, the trial court granted Northland's motion and denied appellants' motion. Judgment was filed on November 7, 1995. This appeal followed.

### DISCUSSION

A. *Standard of Review*

■ We review the trial court's ruling on Northland's motion for summary judgment de novo. (*Lunardi* v. *Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].)

■ "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) A defendant moving for summary judgment has the burden of "negat[ing] a necessary element of the plaintiff's case, and demonstrat[ing] that under no hypothesis is there a material issue

of fact that requires the process of a trial. [Citation.]" (*Ibid.*) To do that, the defendant may rely either on affirmative evidence or discovery responses of the plaintiff showing the absence of evidence necessary to establish at least one essential element of the plaintiff's case. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 589-590 [37 Cal.Rptr.2d 653].) Once the defendant carries this substantive burden, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to the plaintiff's case. (*Barber* v. *Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].) All doubts as to whether there are any triable issues of fact are to be resolved in favor of the party opposing summary judgment. (*Ibid.*)

## B. *Insurer's Duties*

■ Appellants' key contentions concern Northland's duties to defend and indemnify under the policy. In *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792], our Supreme Court summarized the principles governing adjudication of these duties: "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 . . . (*Gray*).) As we said in *Gray*, 'the carrier must defend a suit which potentially seeks damages within the coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.] [¶] The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.]" (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1081, italics omitted.)

■ To the extent appellants' contentions raise issues of policy interpretation, we are guided by the following principles: "Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs its interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' [Citations.] If the meaning a layperson would ascribe to the language

of a contract of insurance is clear and unambiguous, a court will apply that meaning. [Citations.]" (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

Appellants contend that summary judgment was improperly granted because (1) the policy potentially covered the Trujillo action under the provisions concerning liability for bodily injury, (2) the policy potentially covered this action under the provisions concerning liability for personal injury, and (3) Northland owed appellants a duty to defend because it failed to obtain a declaratory judgment when the defense was tendered. As we explain below, appellants' contentions fail, and thus summary judgment was proper.

### C. *Coverage A and the Assault and Battery Exclusion*

Appellants' first contention is that the trial court erred in concluding that a policy exclusion precluded coverage for the Trujillo action under the bodily injury provisions of "coverage A." The policy here provides under coverage A that Northland "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Such injury or damage is covered only if it is caused by an occurrence, which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, an endorsement to coverage A provides that there is no coverage for " '[b]odily injury' or 'property damage': [¶] (1) expected or intended from the standpoint of any insured. [¶] (2) arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." When, as here, the named insured is a corporation, the policy designates as insureds the corporation's executive officers and directors, as well as employees acting within the scope of their employment, such as Pascale.

To establish the absence of a duty to defend on summary judgment, an insurer must show that "the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion." (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 301 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) Here, Northland did not argue that Trujillo's injuries were not caused by an occurrence within the meaning of coverage A, but relied instead on the exclusion contained in the endorsement to coverage A. We thus assume that Trujillo's injuries fell within "the insuring clause," and focus our attention on the "breadth of an exclusion." (*Ibid.*)

In our view, bodily injuries that were subjectively planned or foreseen with some certainty by an insured, *or* that arose from an incident

involving assault or battery, fall within this exclusion.[2] With respect to clause (1), the terms "expected" and "intended" do not apply to "unexpected or accidental injuries that are fortuitous and not planned or intended." (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16-17 [44 Cal.Rptr.2d 370, 900 P.2d 619], italics omitted [interpreting terms in context of coverage clause of commercial general liability policy].) Intent and expectation here are judged from the standpoint of the insured, who must subjectively plan the injury or subjectively foresee the injury "as practically certain." (*Id.* at p. 17; *Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 743-748 [15 Cal.Rptr.2d 815].) Thus, injuries that are planned or believed to be substantially certain by the insured are "intended" or "expected." (12 Cal.App.4th at p. 748.)

Furthermore, clause (2), by its plain language, covers injury or damage arising when someone (not necessarily an insured) commits an act of assault or battery, or is in the course of committing an assault or battery. (*Century Transit Systems, Inc.* v. *American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 126 [49 Cal.Rptr.2d 567] [With respect to similar clause, court concludes: "[W]e can only construe the exclusionary language one way: a suit *based on assault and battery* is excluded no matter who commits it. It is the happening of that event which compels application of the exclusion." (Original italics.)].) Thus, injury stemming from an incident involving assault or battery falls within the scope of clause (2).

The next issue concerns the set of facts upon which Northland should have assessed the existence of a duty to defend. Northland contends that a review of the allegations in Trujillo's complaints is sufficient to show that there was no potential for coverage under this provision. We cannot agree. ▉ "The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source. [Citation.]" (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 300, original italics.) ▉ Here, the evidence cited in appellants' opposition and associated separate statement indicates that appellants forwarded to Northland the police report dated January 5, 1992, along with the first letter from Trujillo's attorney.

The final question is whether the allegations in the complaint and the extrinsic facts available to respondent triggered a potential for coverage

---

[2]Appellants contend in conclusory terms that only conduct that falls under clause (1) *and* (2) is within the exclusion's scope. We disagree. Our review of the policy indicates that, generally, when the definition of a specific exclusion is completed by two or more clauses, each of which is followed by a period, the clauses signify independent alternatives. (See *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545] [policy language must be construed in context of policy, taken as a whole].)

concerning the altercation between Trujillo and Pascale. Here, the facts known to Northland at the inception of the suit were the allegations in the complaints and in the letter from Trujillo's attorney, and the statements in the police report. These documents support two versions of the altercation between Trujillo and Pascale. The complaints and letter portray an unwarranted assault and battery by Pascale upon Trujillo in which Pascale threw Trujillo to the ground and kicked him. By contrast, the police report indicates that Trujillo first assaulted Pascale by throwing a punch, and Pascale responded in self-defense.

Both versions of the altercation trigger the exclusion. Under each version, Trujillo's injuries stemmed from an unwarranted assault. Furthermore, under the first version, these injuries were subjectively foreseeable to Pascale within the meaning of clause (1), and under the second version, they arose from "[an] act . . . in connection with the prevention or suppression of an assault or battery" within the meaning of clause (2). Because the altercation, however viewed, fell squarely within the exclusion, the facts known to Northland did not trigger a potential for coverage under the policy.

Appellants nonetheless contend that there was a potential for coverage because the conduct involved in the altercation may not have risen to assault or battery. In *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], our Supreme Court held that allegations of intentional misconduct do not end the potential for coverage under a policy containing an exclusion pertaining to such misconduct when third party recovery is possible on a negligence theory. In *Gray*, the operative complaint alleged that the insured had assaulted the plaintiff. (See *id.* at p. 267.) When the insured forwarded the complaint to his insurer, stating that he had acted in self-defense, the insurer denied a duty to defend, citing a policy exclusion concerning bodily injury intentionally caused by the insured. (See *ibid.*) The *Gray* court concluded that the precise allegations in the complaint did not limit the duty to defend, and that the facts available to the insurer raised the possibility that the insured "might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct." (*Id.* at pp. 276-277.)

In our view, *Gray* is inapplicable here. The exclusion at issue in the present case is far broader than the exclusion in *Gray*. Furthermore, unlike the situation in *Gray*, the facts known to Northland indicated that if Pascale had acted in self-defense, then Trujillo had engaged in an assault, thereby triggering the policy exclusion. Appellants can escape the scope of the exclusion here only by speculating that *both* Trujillo and Pascale engaged in

merely negligent conduct, contrary to the complaints' allegations and the statements in the police report. ■ However, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." (*Gunderson* v. *Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272].)

■ Appellants also contend that the exclusion did not terminate Northland's duty to defend appellants Taylor and Zinn to the extent that the claims against them rested upon derivative or vicarious liability. This contention is incorrect. (*Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1361 [1 Cal.Rptr.2d 360] ["[W]here, as here, the policy excludes coverage for bodily injury intended or expected by 'an' or 'any' insured, the cases have uniformly denied coverage for all claims, including negligent supervision claims."].)

In sum, the trial court did not err in concluding that there was no potential for coverage under the bodily injury provisions of the policy.

### D. *Coverage B*

■ Appellants also contend that the Trujillo action potentially fell within the "personal injury" provisions of "coverage B." Under coverage B, the policy provides that Northland "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies." The policy defines "personal injury" as "injury, other than 'bodily injury', arising out of one or more of the following offenses: [¶] . . . [¶] c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies[.]" Appellants argue that Trujillo's injuries allegedly arose during a wrongful eviction from appellants' restaurant, and thus Northland had a duty to defend them in the Trujillo action.

We disagree. ■ "Unlike liability coverage for property damage or bodily injury, personal injury coverage is not based on an accidental occurrence." (*General Accident Ins. Co.* v. *West American Ins. Co.* (1996) 42 Cal.App.4th 95, 103 [49 Cal.Rptr.2d 603].) Instead, personal injury coverage ". . . is triggered by one of the offenses listed in the policy." (*Ibid.*) Although the offenses enumerated in a policy are construed broadly when they are defined in generic terms, they encompass " '. . . specific torts which *reasonably* could fall within the general category.' [Citation.]" (*Ibid.*, italics added.)

■ In our view, Trujillo's tort claims against appellants do not reasonably fall within the category of wrongful entry or eviction. Generally,

California courts have construed this offense "as applying to tort claims arising out of the interference with an interest in real property," such as trespass, nuisance, and noninvasive interferences with the use and enjoyment of property. (See *General Accident Ins. Co.* v. *West American Ins. Co.*, *supra*, 42 Cal.App.4th at pp. 103-104.) However, the specific policy language defining "wrongful entry or eviction" here limits "personal injury coverage to a physical invasion of an interest in real property." (*Id.* at pp. 104-105.) Here, none of Trujillo's claims allege that appellants physically invaded his interest in real property, nor could he make such an allegation. As appellants' business patron or invitee (see *Kentucky Fried Chicken of Cal., Inc.* v. *Superior Court* (1997) 14 Cal.4th 814, 817-819 [59 Cal.Rptr.2d 756, 927 P.2d 1260]), Trujillo had no estate or interest in appellants' real property. (See *Jenson* v. *Kenneth I. Mullen, Inc.* (1988) 211 Cal.App.3d 653, 658 [259 Cal.Rptr. 552].)

Appellants contend to the contrary that the Trujillo action potentially falls under coverage B because Pascale injured Trujillo while dealing with an invasion of appellants' real property interests *by Trujillo*. However, personal injury coverage is determined "by the nature of the claims made *against the insured . . . .*" (*Martin Marietta Corp.* v. *Insurance Co. of North America* (1995) 40 Cal.App.4th 1113, 1125 [47 Cal.Rptr.2d 670], italics added; *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 511 [20 Cal.Rptr.2d 376] ["Coverage . . . is triggered by the *offense*, not the injury or damage which a *plaintiff* suffers." (Italics added.)]; 4 Cal. Insurance Law & Practice (1994) § 49.51[1], pp. 49-111 to 49-112.)

Appellants also contend that Trujillo's claims allege a "wrongful eviction" under a reasonable understanding of these terms because Pascale allegedly wrongfully injured Trujillo while "evicting" Trujillo from appellants' restaurant. In support of this contention, appellants cite cases from foreign jurisdictions, principally, *Z.R.L. Corp.* v. *Great Cent. Ins. Co.* (1987) 156 Ill.App.3d 856 [109 Ill.Dec.481, 510 N.E.2d 102], *INA* v. *Forrest City Country Club* (1991) 36 Ark.App. 124 [819 S.W.2d 296], and *Hartford Accident and Indemnity* v. *Krekeler* (8th Cir. 1974) 491 F.2d 884.

None of these cases are persuasive on the issue before us. In *Z.R.L. Corp.* v. *Great Cent. Ins. Co.*, *supra*, 510 N.E.2d at pages 103-104, the third party claimants asserted that the insured had forced them to leave the insured's private club on discriminatory grounds. Unlike the policy in the present case, the insured's policy provided for personal injury coverage triggered by the offense of "wrongful eviction or wrongful entry," without further clarification, and the insurer conceded that this language would cover "a situation in

which the insured removed a rowdy patron from the premises." (510 N.E.2d at pp. 103-104.) The court in *Z.R.L. Corp.* thus concluded that the complaint alleged a "wrongful eviction" within the meaning of the provisions of the insured's personal injury coverage. (See 510 N.E.2d at p. 104.)

By contrast with the situation in *Z.R.L. Corp.*, the policy here requires wrongful eviction of a person "from, a room, dwelling or premises that the person occupies," thereby clearly signaling the requirement that the person so evicted must be wrongly deprived of occupation. Moreover, Trujillo, unlike the third party claimants in *Z.R.L. Corp.*, did not allege that appellants improperly asked him to leave their property. In view of these differences, we cannot conclude that Pascale's allegedly tortious conduct in the course of removing Trujillo was potentially a "wrongful eviction" within the meaning of the policy before us.

In *INA* v. *Forrest City Country Club*, *supra*, 819 S.W.2d at page 297, as in *Z.R.L. Corp.*, the third party claimant asserted that the insured had forced her to leave the insured's private club on discriminatory grounds. However, the underlying policy defined "wrongful eviction" in the same terms found in the Northland policy at issue here. (See 819 S.W.2d at p. 297.) Nonetheless, the court in *INA* held that the insurer had a duty to defend because the definition was ambiguous. (See *id.* at p. 298.) The court reasoned that the word "evict," used in its popular sense, means merely to force out or eject, and thus the definition could reasonably be understood to encompass any wrongful ejection, regardless of whether the pertinent party had an interest in the real property from which the party had been ejected. (See *ibid.*)

We cannot agree with the court's reasoning in *INA*. Under California law, an insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other. (See Civ. Code, § 1641; *Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 56 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518].) The proposal that the policy definition covers any wrongful "eviction," understood in the popular sense, fails to give the phrase "from, a room, dwelling or premises that the person occupies" a function in the definition. Because an eviction, popularly understood, is necessarily from *somewhere*, the phrase in question is redundant unless it means something other than merely "from somewhere." In this regard, we observe that the term "to occupy," in one of its popular senses, means "to reside in as an owner or tenant[.]" (See Webster's Collegiate Dict. (10th ed. 1995) p. 804.) Thus, the only reasonable explanation for the additional phrase is to clarify that the wrongfulness of the ejection must consist in, or attach to, an invasion of the right of occupation. (See *Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766,

775 [215 Cal.Rptr. 416] [in interpreting personal injury provisions of insurance policy, court states that " '[o]ccupancy' ordinarily refers to 'the taking and holding possession of real property under a lease or tenancy at will,' " citing Webster's New Internat. Dict. (3d ed. 1961) p. 1560]; *Wilmington Liquid Bulk Terminals, Inc.* v. *Somerset Marine Inc.* (1997) 53 Cal.App.4th 186, 195 [61 Cal.Rptr.2d 727] [in context of personal injury provisions of insurance policy, " '[o]ccupancy' means having possession, which in turn, requires having control"].) We therefore reject the notion that the definition is ambiguous in the manner proposed.

Finally, in *Hartford Accident and Indemnity* v. *Krekeler, supra,* 491 F.2d at pages 884-887, the insured forced his way into the third party claimant's house to collect a bill and a fight followed. The court in *Krekeler* concluded that the third party's complaint alleged a sufficiently close nexus between the insured's trespass and the third party's injuries to raise the potential for coverage under the "wrongful entry or eviction" provisions of the insured's personal injury coverage. (See *id.* at pp. 886-887.) Unlike the situation in *Krekeler,* appellants did not invade any interest in real property held by Trujillo, and thus their reliance on *Krekeler* is misplaced.[3]

In sum, the trial court did not err in concluding that there was no potential for coverage under the personal injury provisions of the policy.[4]

### E. *Declaratory Judgment*

 Finally, appellants contend that Northland owed appellants a duty to defend because it failed to obtain a declaratory judgment concerning its duty to defend when the defense was tendered. This is incorrect. When, as here, there is no potential for coverage on the basis of the facts known to the insurer at the time of tender and the insurer "has made an informed decision on the basis of the third party complaint and the extrinsic facts known to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit. [Citations.]" (*Gunderson* v. *Fire Ins. Exchange, supra,* 37 Cal.App.4th at p. 1114, italics omitted.)

---

[3]Appellants also contend that the trial court erred in concluding that the "assault and battery" exclusion under coverage A precluded the potential for coverage under coverage B. However, absent a triable issue of material fact, we will affirm the grant of summary judgment "if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court. [Citations.]" (*Western Mutual Ins. Co.* v. *Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].)

[4]In view of this conclusion, we do not address Northland's argument that Trujillo failed to allege "injury, other than 'bodily injury'," within the meaning of the personal injury provisions of coverage B.

### Disposition

The judgment is affirmed.

Epstein, Acting P. J., and Aranda, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied October 22, 1997. Mosk, J., was of the opinion that the petition should be granted.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.