Filed 4/3/14  Gonzaga v. Burlington Ins. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| JAYSON GONZAGA, | B246019 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC457448) |
| THE BURLINGTON INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Brazile, Judge.  Affirmed.

Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Appellant.

Weston & McElvain, Aaron C. Agness and Edmond Sung for Defendant and Respondent.

_____

## INTRODUCTION

This is an appeal from the judgment entered after the trial court granted the defendant insurance company's motion for summary judgment on the grounds its policy provided no coverage and no duty to defend based on a clear and conspicuous assault and assault and battery exclusion. Based on our review of the relevant policy provisions, along with the undisputed facts in the record, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Jayson Gonzaga filed a complaint against The Burlington Insurance Company (among other defendants), alleging causes of action for (1) tortious breach of the covenant of good faith and fair dealing, wrongful refusal to settle and wrongful failure to defend; (2) breach of insurance contract—failure to pay indemnity and (3) breach of insurance contract—failure to defend. According to the allegations of Gonzaga's operative (first amended) complaint, he had previously filed a complaint (Los Angeles Sup. Ct., Case No. GC 040820) against Capital Protection, Inc. (Capital, also known as Superior Protection Guest Relations, Inc.) for personal injuries he sustained on April 20, 2007. Capital, a California corporation, was an armed security service—in the business of providing businesses with security and patrol services. In the underlying action, Gonzaga alleged Capital had failed to provide for his safety and security so as to cause his injuries.

Gonzaga alleged his claims were covered with respect to both indemnity and defense under the Burlington general liability insurance policy Capital obtained from Burlington (a commercial general liability insurance policy number 160 BW07353 effective July 1, 2006 to July 1, 2007), with policy limits of $1 million. He attached a copy of the policy as Exhibit A to his complaint, in which he said Burlington described and classified Capital as a "Security and Patrol Agenc[y]," described its work as "Armed Security Service" and underwrote, charged premiums (of more than $58,000 per year) and issued the policy on that basis. Gonzaga further alleged Capital properly submitted Gonzaga's claim and tendered the defense of Gonzaga's lawsuit to Burlington, but Burlington breached its obligations to its insured by wrongfully and in bad faith failing to

2

defend its insured or to effectuate a reasonable settlement; instead, Gonzaga alleged, Burlington denied coverage and defense, claiming the allegations of the underlying complaint "arose 'out of assault or battery or out of any act or omission in connection with the prevention or suppression of an assault or battery' (which was the insured's very business and which was described as the business activities of the insured) under an exclusion in the policy, Form No. BG-G-042 0203 which appears on page 40 of the policy." As such it was not called to the insured's attention; it was not clear, plain or conspicuous; it would not be expected by the ordinary and reasonable insured; it would violate the reasonable expectations of the insured; and its application would defeat the very purpose of the insurance contract, would render the promised coverage illusory and would be legally and factually unconscionable.

At arbitration of the underlying action, it was determined that Capital was liable to Gonzaga because it and its employees acted negligently and such negligence was a direct and proximate cause of Gonzaga's injuries and damages; judgment was then entered against Capital and in favor of Gonzaga on February 24, 2011, in the amount of $4,986,621 plus interest at the rate of 10 percent. (He attached a copy of the judgment to his complaint as Exhibit B.) Capital assigned its claims against Burlington, including but not limited to all rights under the Burlington policy, to Gonzaga. In addition, based on the judgment against Capital, Gonzaga alleged his entitlement as judgment creditor to the Burlington policy limits plus costs and interest based upon his bodily injury allegedly covered under the policy Burlington issued to Capital.

Burlington filed its answer and later moved for summary judgment on the grounds it had no duty to defend or indemnify Capital in connection with Gonzaga's underlying action.

In its separate statement, Burlington submitted evidence in support of the following facts: Gonzaga alleged he was attending a party at Dave & Buster's in the City of Arcadia on April 20, 2007, when he "was shot by an assailant who had entered the defendants' [Gonzaga named both Dave & Buster's and Capital as defendants] premises and business." After the parties agreed to submit their dispute to arbitration, the

3

arbitrator found Capital had negligently failed to prevent or deter the foreseeable shooting, resulting in a total award of $4,986,621.[1]

In addition, Burlington noted, Capital and Dave & Buster's had a service agreement which specified that Capital's officers were contracted to provide the following services (with Burlington adding emphasis as follows): uniformed officers stationed will conduct foot patrols of the area and will be in direct communications with our dispatch facility or a supervisor on duty at all times; immediate intervention and **notification** of proper authorities during emergency situations; **securing and locking of the facilities' doors** and gates with frequent and **regular monitoring** of such areas while officers are on duty; constant patrols of all parking facilities, while maintaining high visibility with continual **notation of irregularities** and incidents; comprehensive incident **reports** as necessary, which will be turned in to management for review and proper notification; instant notification to the general manager of all serious security issues, areas of concern, **serious maintenance issues**, and all **potential issues of liability** observed by security officers while on duty.  (Bold emphasis added by Burlington.)

The policy Burlington issued to Capital and identified in Gonzaga's complaint contained a commercial general liability coverage form, Form No. CG 00 01 10 01, which expressly provides:

"**SECTION I—COVERAGES**

"**COVERAGE A BODILY INJURY**

"**AND PROPERTY DAMAGE**

"**LIABILITY**

"**1.  Insuring Agreement**

---

[1]    In exchange for a covenant not to execute on the arbitration award, Capital assigned its rights against Burlington to Gonzaga.  According to the partial settlement agreement, Capital assigned its rights against its own insurance broker to Dave & Buster's under a separate settlement agreement; Gonzaga was not assigned the rights to proceed against Capital's insurance broker for negligent failure to properly obtain coverage on Capital's behalf.

**"a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

". . .

**"b.** This insurance applies to 'bodily injury' and 'property damage' only if:

"**(1)** The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage' territory'; and . . . [¶]

"'Occurrence' is defined in the policy as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" (Bold emphasis in original.)

In addition, the policy contains an endorsement entitled "Exclusion—Assault or Battery," Form No. BG-G-042 0203, which provides in part:

**"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**"EXCLUSION – ASSAULT OR BATTERY**

"***

"This insurance does not apply to:

**"a. Expected Or Intended Injury, Or Assault Or Battery**

"'Bodily injury' . . .

"(1) Expected or intended from the standpoint of any insured; or

"(2) Arising out of an assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." (Bold emphasis in original.)

In opposition, Gonzaga argued Burlington underwrote this risk on the express basis: "Description of Risk: Security Guards." After underwriting this risk, Burlington determined it would charge a premium of about $60,000, commensurately reflecting the risk assumed. He said the policy's original "Expected or Intended Injury" exclusion (Section 1.[A][a]) did not include the exclusion Burlington asserts here, which was added as an endorsement, and is found nowhere in the body of the policy. Gonzaga further

5

argued the asserted exclusion is buried among 30 endorsements and exclusions (and they are listed), "buried on page 40 of a 58 page policy." "One of the 30 endorsements and exclusions slapped onto the 58-page policy was 'Exclusion—Security Service, Detectives and Patrol Agents' including 'the maintenance and use of firearms'; another exclusion was for the "'rendering or failure to render any professional service'"; still another was for "'Exclusion—Designated Work . . . . Description of your work:  Armed Security Service'" and yet another was for "'property of others . . . entrusted to you for safekeeping.'"

After hearing argument (and commenting that the assault and battery exclusion would "jump out" at anyone who simply looked at the policy—"I don't know how much clearer they could have made it"), the trial court granted Burlington's summary judgment motion.  The trial court found the policy's assault and battery exclusion was plain, clear and conspicuous and that it precluded coverage for claims arising out of the failure to prevent or suppress an assault or battery.  Moreover, the trial court determined Gonzaga had failed to present any evidence that the assault or battery exclusion rendered the policy illusory, noting Gonzaga failed to present any evidence the scope of Capital's work was limited to preventing assault or battery; and he presented no evidence to show the premium for the policy was unreasonable, that Capital was unaware of the exclusion, that Capital did not get the exact policy it had requested and bargained for or that the policy was unconscionable.[2]

_____

[2]    The trial court sustained Burlington's objections to paragraphs 5 and 6 of the declaration of an expert regarding insurance brokers (Elliot Rothman, who said Capital's insurance broker (Hull) had an obligation to disclose the assault or battery exclusion and Hull failed to do so) and one paragraph of the declaration of Gonzaga's counsel (Roland Wrinkle) purporting to authenticate a different Burlington insurance policy discussed in one of the authorities cited by Burlington (and involving Burlington as a defendant). Gonzaga does not challenge these rulings in this appeal.  Accordingly, issues relying on the evidence ruled inadmissible are waived.  (See *Yanowitz v. L'Oreal U.S.A., Inc.* (2005) 36 Cal.4th 1028, 1027.)

We note however, that Burlington did not file objections to the remainder of the evidence submitted with plaintiff's counsel's declaration, which included Capital's

Gonzaga appeals from the judgment subsequently entered.

## *DISCUSSION*

**The Standard of Review.**

We review the trial court's grant of summary judgment de novo. (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385.) The interpretation of an insurance policy is a question of law to be determined by the court. (*Waller v. Truck Ins. Exch. Ins.* (1995) 11 Cal.4th 1, 18.) "Absent a factual dispute as to the meaning of policy language," which, as we will explain, we do not have in this case, "the interpretation, construction and application of an insurance contract is strictly an issue of law." (*Century Transit Systems, Inc. v. American Empire Surplus Lines Inc. Co.* (1996) 42 Cal.App.4th 121, 125, citation omitted.)

**Rules of Policy Interpretation.**

An insurance company has the right to limit the coverage of a policy it issues and when it has done so, "the plain language of the [policy] must be respected." (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432.)

As our Supreme Court explained in *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198 (*Haynes*), "'"'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.'"' (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal. Rptr. 2d 647, 988 P.2d 568].) Accordingly, in interpreting an insurance policy, we seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the policy. (Civ. Code, §§ 1636, 1639.; *Palmer v. Truck Ins. Exchange, supra*, at p. 1115.) When interpreting a policy provision, we give its words their ordinary and popular sense except where they are used by the parties in a technical or other special sense. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal. Rptr. 820, 799 P.2d 1253].)

---

insurance application and documents relating to the policy's renewal and insurance binder.

"In the insurance context, 'we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect."' (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201 [110 Cal. Rptr. 1, 514 P.2d 953].) Coverage may be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails. (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 50, fn. 4 [70 Cal. Rptr. 2d 118, 948 P.2d 909].) But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' (*Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal. Rptr. 172, 377 P.2d 284] (*Steven*).) Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. (*National Auto. & Casualty Ins. Co. v. Stewart* (1990) 223 Cal. App. 3d 452, 458 [272 Cal. Rptr. 625]; *Ponder v. Blue Cross of Southern California* (1983) 145 Cal. App. 3d 709, 719, 723 [193 Cal. Rptr. 632].)" (*Haynes, supra,* 32 Cal.4th at p. 1204.)

The "words in an insurance policy are to be read in their plain and ordinary sense. [Citation.] Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms." (*McKee v. State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 776.) "Policies of insurance, like other contracts, must be read as a whole, with each part being read in conjunction with other portions thereof." (*Hartford Acc. & Indem. Co. v. Sequoia Ins. Co.* (1998) 211 Cal.App.3d 1285, 1298.)

"'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" ([Civ. Code], § 1644) controls judicial interpretation. (*Id.*, § 1638.)' (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253]; *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800,

807 [180 Cal.Rptr. 628, 640 P.2d 764].)  This reliance on common understanding of language is bedrock.'

"Equally important are the requirements of reasonableness and context.

"First, 'An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable.'  (*Suarez v. Life Ins. Co. of North America* (1988) 206 Cal.App.3d 1396, 1402 [254 Cal.Rptr. 377], italics added.)  'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.'  (*Reserve Insurance Co. v. Pisciotta, supra*, 30 Cal.3d 800, 807.)

"Second, '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'  (*Bank of the West v. Superior Court, supra*, 2 Cal.4th 1254, 1265, original italics, quoting *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920].)  'There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application.'  (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246].)"  (*Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867.)

The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer.  (*Haynes, supra,* 32 Cal.4th at p. 1204, citing *State Farm Mut. Auto. Ins. Co. v. Jacober, supra*, at pp. 201–202; further citation omitted.)

**The Assault or Battery Exclusion.**

Capital's Burlington policy includes an endorsement entitled "Exclusion—Assault or Battery," Form No. BG-G-042 0203.  The exclusion is expressly identified as "BG-G-042 02 03 Exclusion-Assault/Battery" on the Listing of Forms and Endorsements as part of the policy at its inception.  It was expressly indentified as "BG-G-042 02 03 Exclusion-Assault/Battery" on the quote as well as the binder issued before the policy was obtained.

The Assault or Battery Exclusion states:

"THIS ENDORSEMENT CHANGES THE POLICY.

9

"PLEASE READ IT CAREFULLY.

　　"**EXCLUSION – ASSAULT OR BATTERY**

"***

"This insurance does not apply to:

　　"**a. Expected Or Intended Injury, Or Assault Or Battery**

　　"'Bodily injury' . . .

　　"(1)　Expected or intended from the standpoint of any insured; or

　　"(2)　Arising out of assault or battery, *or* out of *any*

　　*act or omission in connection with the*

　　*prevention or suppression of an assault or*

　　*batter*y."　(Italics added.)

According to Gonzaga, the "prevention or suppression of an assault or battery" exclusion is not "clear, plain and conspicuous" and is therefore unenforceable under "the *Haynes* doctrine." (*Haynes, supra,* 32 Cal.4th 1198. We disagree.

Gonzaga says the location, drafting, layout, type size, font and spacing of the exclusion are "designed to make the insured believe it is a standard assault or battery exclusion excluding assaults or batteries by any insured or employee of an insured and to hide the fact it also purports to exclude something very different, i.e., 'or out of any act or omission in connection with the prevention or suppression of an assault or battery'"— amounting to "an unfair, hindsight game of 'Where's Waldo?'" As the trial court observed, a review of the policy defeats Gonzaga's argument.

The Assault or Battery exclusion in the Burlington policy before this court is nothing like the exclusion considered in *Haynes*, *supra,* 32 Cal.4th 1198—purportedly limiting permissive user coverage in a declarations page by identifying an endorsement only as "S9064," then obscuring the limitation under the unusual subheading "Other Insurance" (which would suggest more, not less coverage) and then incorporating multiple amendments to multiple policy forms such that a reader would not have any indication the endorsement would limit coverage—rather than setting out the exclusion in the manner accomplished here. (*Id.* at pp. 1202, 1206.)

10

Burlington notes (and Gonzaga presents no authority to the contrary): "Every California court, and every federal court, analyzing the Assault or Battery exclusion under California law based on a factual scenario similar to the one in the Underlying Action, has had no problem enforcing it." (See e.g., *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121 (*Century*); *Zelda, Inc. v. Northland Ins. Co.* (1997) 56 Cal.App.4th 1252 (*Zelda*); see also *Essex Ins. Co. v. Yi* (N.D. Cal. 1992) 795 F. Supp. 319 [applying California law].)

In *Century, supra,* 42 Cal.App.4th 121, the "policy expressly excluded coverage for ". . . *any claim . . . based on assault and battery . . . .*'" (*Id.* at p. 126, original italics.) Consequently, the court observed, "this case involves something more than a simple 'intentional act' exclusion. . . . This language places the focus not upon an insured's conduct or intent, but rather upon the type of event in which a plaintiff has sustained an injury. [Citation.] [¶] *We can find no ambiguity in this language.*" (*Ibid.,* italics added.)

The *Century* court affirmed a grant of summary judgment, stating: "[N]o California case has considered the application of the [Assault and Battery] exclusion, but given its *lack of ambiguity and its plain clear meaning*, courts in other states have had no trouble concluding that such an exclusion provides coverage of *any claim based on assault and battery irrespective of the legal theory asserted against the insured. . . .* Every court that has considered a similar or identical clause agrees. One court considering identical language stated that to interpret it otherwise 'would be to "torture" it to create ambiguities where such do not exist.'" (*Id.* at p. 127, and p. 128, fn. 4 [noting "based on" has the same effect as "arising out of"].)

"We find this plethora of authority to be persuasive and we see no reason not to give a similar effect in California to this very clear exclusionary language. The assault and battery is clearly the basis for the action against [the insured cab company]; the fact that the claim also includes separate negligent acts by [the insured] cannot avoid the exclusion. Those alleged acts of negligence were based on the assault and battery committed by [a cab driver employed by the insured] on the plaintiffs. The exclusion therefore applies and [the insured] cannot rely upon the allegations of

11

negligence to create a potential for coverage.[]" (*Century, supra,* 42 Cal.App.4th at p. 128, footnote omitted.)

Furthermore, in *Zelda, supra,* 56 Cal.App.4th 1252, Division Four considered an exclusion virtually identical to the one presented in this case; that is, there was "no coverage for '"[b]odily injury" or "property damage": [¶] (1) expected or intended from the standpoint of any insured. [¶] (2) arising out of assault or battery, *or* out of *any act or omission in connection with the prevention or suppression of an assault or battery*.'" (*Id.* at p. 1260, italics.) The *Zelda* court determined that "clause (2), *by its plain language*, covers injury or damage arising when someone (not necessarily an insured) commits an act of assault or battery, or is in the course of committing an assault or battery." (*Id.* at p. 1261, quoting *Century, supra,* 42 Cal.App.4th at p. 126, original italics ["[w]ith respect to similar clause" (comparing clauses in *Zelda* and *Century*): "[W]e can only construe the exclusionary language one way: a suit *based on assault and battery* is excluded no matter who commits it. It is the happening of that event which compels application of the exclusion"].)

In this case, just as in *Zelda*, *supra,* 56 Cal.App.4th 1252, Capital was sued for its alleged negligence in failing to prevent or suppress the battery on Gonzaga. "[B]y its plain language," coverage for such claims is expressly excluded under the Burlington policy's assault or battery exclusion. (*Zelda, supra,* 56 Cal.App.4th at p. 1261; and see *Century, supra,* 42 Cal.App.4th at p. 126.)

Indeed, Gonzaga argues for a convoluted construction of the exclusion that simply does not follow *without* "torturing" it to create ambiguity where none exists—by treating subparagraph (2) as a "sub-exclusion" rather than giving "this plain language" its plain meaning. (*Zelda, supra,* 56 Cal.App.4th at p. 1260; and *Century, supra,* 42 Cal.App.4th at p. 127 ["this very clear language"].) "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' [Citations.]" (*Zelda, supra,* 56 Cal.App.4th at p. 1259.) As there is no such evidence of a technical or special meaning given to the "plain language"

12

used in this case, we conclude the "meaning a layperson would ascribe to the language of [Burlington's] contract of insurance [with Capital] is *clear and unambiguous,*" and therefore apply its plain meaning: there was no coverage under the Burlington policy for bodily injury "[a]rising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." (*Zelda, supra,* 56 Cal.App.4th at p. 1261; *Century, supra,* 42 Cal.App.4th at p. 126.)

Gonzaga says Burlington charged a small armed security guard service an annual premium of more than $60,000 and then denied coverage for the very reason the insured bought the policy—namely, claims "arising out of the prevention or suppression of an assault or battery." Gonzaga's arguments rely on a finding that the policy language is ambiguous, notwithstanding case law to the contrary (*Century, supra,* 42 Cal.App.4th 121; *Zelda, supra,* 56 Cal.App.4th 1252) and then speculation as to what Capital may have thought instead of what the policy actually says. "If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning." (*Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.* (1993) 5 Cal.4th 854, 867 ["This reliance on common understanding of language is bedrock"].) Because we find no ambiguity, we need not address Gonzaga's remaining arguments (and Gonzaga has no evidence to support them in any case). "It is not our role to speculate on the policyholder's abstract expectations, but rather to consider reasonable expectations *defined by the insurer's policy language*." (*Haynes, supra,* 32 Cal.4th at pp. 1210-1211, italics added.)

As Justice Croskey wrote in *Century, supra,* 42 Cal.App.4th at page 130, the insurer (American) "had no duty to indemnify or defend [the insured, Century] because the claim asserted by the plaintiffs was based on an assault and battery and a clear and unambiguous exclusion precluded coverage as a matter of law. The trial court therefore properly granted summary judgment."

13

*DISPOSITION*

The judgment and order granting Burlington's motion for summary judgment are affirmed.  Burlington is to recover its costs on appeal.


**WOODS, J.**

**We concur:**



**PERLUSS, P. J.**                                                              **ZELON, J.**

14