**HUSSEIN ALI RESHAMWALLA,
et al., Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY
COMPANY, Defendant.**

**No. CIV.S-99-2129 FCD/JF.**

United States District Court,
E.D. California.

Sept. 1, 2000.

Steven F. Johnson, Sacramento, CA, Frank D. Bloksberg, Nevada City, CA, for Plaintiffs.

Peter H. Klee, Mark W. Hansen, Luce, Forward, Hamilton & Scripps LLP, San Diego, CA, for Defendant.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs Hussein Ali and Raheda Reshamwalla ("plaintiffs") bring this action against defendant State Farm Fire and Casualty Company ("State Farm") alleging that State Farm breached the covenant of good faith and fair dealing by refusing to defend and indemnify Darrel Abruzzo ("Abruzzo") in an underlying action by plaintiffs against Abruzzo. Plaintiffs bring these claims as assignees of Abruzzo's rights under a homeowner's insurance poli-

cy issued by State Farm. Plaintiffs also bring a direct action against State Farm as judgment creditors pursuant to Cal. Ins. Code § 11580(b)(2).

This matter is before the court on plaintiffs' and State Farm's cross-motions for summary judgment. Plaintiffs move for summary judgment solely on the issue of State Farm's duty to defend Abruzzo in the underlying action. State Farm moves for summary judgment as to each of plaintiffs' claims. For the reasons set forth below, plaintiffs' motion for partial summary judgment is granted in part and denied in part, and State Farm's motion is denied in its entirety.[1]

## BACKGROUND

### 1. The Incident

Sometime before 9:00 p.m. on December 21, 1992, Abruzzo and several other teenagers entered a construction site near Interstate 405. Plfs.' Stmt. Undis. Facts ("PUF"), filed Feb. 14, 2000, Nos. 1, 4. Sometime thereafter, some or all of the teenagers began throwing concrete debris into traffic. PUF No. 6. A piece of concrete thrown by the teenagers smashed through plaintiff Hussein Ali Reshamwalla's ("Mr.Reshamwalla") windshield as he drove past the construction zone, striking him in the face and causing severe injuries. PUF Nos. 7, 8.

At the time of the incident, Abruzzo was fifteen years old and was staying with his mother in Redondo Beach, California. Nucci Decl. ¶ 3, attached as Ex. A to Ex. F to PUF. Abruzzo's parents divorced in 1979. Nucci Stmt., p. 7, attached as Ex. F to PUF. Pursuant to a modified custody agreement, filed September 16, 1991, Abruzzo lived with his father and stepmother in England while school was in session and during one mid-term break and spent the remaining time with his mother in Redondo Beach. Order Amending Custody, attached as Ex. H to PUF.

### 2. The Underlying Action

On December 29, 1994, plaintiffs filed an action in Los Angeles Superior Court ("underlying action") against Abruzzo, his mother Tiya–B Nucci and others alleging battery, negligence and loss of consortium. Underlying Complaint ("Compl."), attached as Ex. 3 to State Farm's Stmt. Of Undis. Facts ("DUF"), filed Mar. 13, 2000. As the factual basis for his cause of action for battery, Mr. Reshamwalla alleged that: "On or about December 21, 1991[sic],[2] defendants NELSON, MC-DONALD, PROFFITT, [ABRUZZO] AND DOES 76 through 100, conspired to throw debris onto the I–405 into the path of oncoming vehicles. In pursuit of the conspiracy, defendants NELSON, MC-DONALD, PROFFITT, [ABRUZZO] AND DOES 76 through 100 did indeed throw debris onto I–405 into the path of oncoming vehicles." Compl. ¶ 27. He further alleges that: "A large piece of concrete thrown by defendants ... crashed through plaintiff [HUSSEIN ALI] RESH-AMWALLA'S windshield .... str[iking] plaintiff RESHAMWALLA squarely in the face and knock[ing] him unconscious." Compl. ¶ 31. Mr. Reshamwalla's negligence cause of action expressly incorporated the above allegations and added that defendants "did negligently and with reckless disregard for the safety and rights of others throw debris into the moving traffic causing severe physical and emotional injuries to the plaintiff." Compl. ¶ 37.

### 3. The Policy ·

At the time of the incident, State Farm Fire & Casualty Homeowners Insurance Policy No. 71–EO–09775 was in full force and effect. *See* Policy, attached as Ex. 6

---

1. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78–230(h).

2. All other documents reflect that the incident occurred in 1992. Thus, this appears to be a typographical error.

to DUF. The policy provided in pertinent part:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or property damage to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice.

*Id.* p. 13 (emphasis in original). An "insured" "means you and, if residents of your household ... your relatives." *Id.*, p. 1. "You" and "Your" mean the " 'named insured' shown in the Declarations." *Id.* Nucci and her fiancé Michael Beck were the named insureds. Declarations Page, attached as Ex. 6 to DUF

Abruzzo requested that State Farm indemnify him and defend him in the underlying action. State Farm refused Abruzzo's request on or about December 22, 1994, explaining that:

> The policy insures our named insured and relatives ... only if residents of the insured's household. It is undisputed that Darrell [Abruzzo] was not a resident of the household of Mr. Beck and Ms. Nucci. Thus, he does not qualify as an insured under our policy.

Letter from State Farm to Frank Blocksberg, Esq., dated Dec. 22, 1994, attached as Ex. D to PUF.

### 4. Release And Settlement Agreement

On or about April 5, 1996, plaintiffs and Abruzzo entered into a Release and Settlement Agreement whereby:

> [Plaintiffs], for valuable consideration hereinafter enumerated, do hereby forever release and discharge DARRELL ABRUZZO [ ] from any and all claims, demands, and causes of action that We have or may have, of any nature whatsoever, as a consequence of any injuries, death, property damage, expenses or other loss or detriment arising out of the

concrete throwing incident which occurred on December 21, 1992 and which gave rise to Los Angeles Superior Court Case No. YC018371.

Release and Settlement Agreement, p. 1, attached as Ex. 4 to DUF.

> In consideration of the Release set forth above, DARRELL ABRUZZO agrees to the following:
>
> A. Entry of default judgment against him in Case No. YC018371. The amount, if any, of the default judgment will be determined by jury trial or the court in a default prove-up hearing;
>
> ...
>
> D. That default was properly entered against him in Case No. YC018371; and,
>
> E. That he waives all defenses regarding service and challenging the default judgment.
>
> ...
>
> In consideration of the above, Plaintiffs agree to the following:
>
> A. Plaintiffs covenant not to execute the default judgment against DARRELL ABRUZZO ....

*Id.* pp. 1–2.

Plaintiffs obtained an unopposed default judgment against Abruzzo on August 28, 1998. *See* Judgment By Court After Default, filed Aug. 28, 1998, attached as Ex. 5 to DUF.

### 5. Assignment of Rights

On March 14, 1999, Abruzzo assigned and transferred all of his rights against State Farm to the Reshamwallas. Specifically, Abruzzo assigned plaintiffs "all rights and causes of action I may have against any insurance carrier which owed me a duty of indemnity or defense arising out of the concrete throwing incident which occurred on December 21, 1992 and which gave rise to the [underlying action].... [including] all rights and causes of action I may have against State Farm ... arising out of insurance policy 71–EO–0977–5." Release and Settlement Agree-

ment, executed Mar. 14, 1999, attached as Ex. 4 to DUF.

## STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 57 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS

Plaintiffs argue that they are entitled to summary judgment on their claim that State Farm breached the covenant of good faith and fair dealing in refusing to defend Abruzzo because a potential for coverage existed at the time State Farm refused to provide such a defense, and such refusal was unreasonable. State Farm moves for summary judgment as to each of plaintiffs' claims on the grounds that: (1) Abruzzo is not an "insured" under the policy; (2) the act in question does not constitute an "accident" within the meaning of the policy; (3) the act in question is specifically excluded from coverage under the policy; (4) the act in question is specifically excluded from coverage under Cal. Ins.Code § 533; and (5) plaintiffs' release extinguished any liability Abruzzo may have had for the act in question and rendered the subsequent default judgment a nullity.

### 1. Duty to Defend

Before the court can reach the issue of State Farm's bad faith, the court must determine whether State Farm was obligated under the terms of the policy to defend Abruzzo against plaintiffs' claims. "An insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to the *potential* of liability under the policy." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis added). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara*

*B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993).

> To prevail [on a motion for summary judgment], the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of the coverage, therefore add no weight to the scales.

*Montrose Chem. Corp. of Cal. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993).

> The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal the possibility that the claim may be covered by the policy.

*Quan v. Truck Ins. Exch.,* 67 Cal.App.4th 583, 591, 79 Cal.Rptr.2d 134 (1998) (quoting *Gray,* 65 Cal.2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168). "[T]he duty to defend is determined by the information possessed by the insurer at the time it refuses to defend, not by information subsequently obtained." *Amato v. Mercury Cas. Co.* *("Amato I"),* 18 Cal.App.4th 1784, 1787, 23 Cal.Rptr.2d 73 (1993).

### A. Insured Under The Policy

■ State Farm correctly notes that under the policy, it is obligated to defend and indemnify its "insureds." The policy defines "insured" as: "[Y]ou and, if residents of your household ... your relatives ...."

Policy, p. 1. " 'You' and 'Your' mean the 'named insured' shown in the **Declarations**." *Id.* (emphasis in original). Tiya–B Nucci and Michael Beck are listed as the "NAMED INSURED" on the Declarations Page. Declarations Page, attached as Ex. 6 to DUF. Courts have interpreted this definition of insured to include two separate requirements: (1) the relative must reside with the named insured at the time of the incident and (2) the relative must be a member of the named insured's household at the time of the incident in question. *See Jacobs v. Fire Ins. Exch.,* 227 Cal. App.3d 584, 590, 278 Cal.Rptr. 52 (1991).[3] State Farm contends that it is entitled to summary judgment as to each of plaintiffs' claims because Abruzzo was not an "insured" under the policy because (1) he lived with his father in England the majority of the year, and (2) Mr. Beck was not present during Abruzzo's visits with his mother.

■ The term "resident" is not defined in the policy. California courts, however, have found that the term "residence" "connotes any factual place of abode of some permanency, more than a mere temporary sojourn." *Kibbee v. Blue Ridge Ins. Co.,* 69 Cal.App.4th 53, 61–62, 81 Cal.Rptr.2d 294 (1999) (quoting *Utley v. Allstate Ins. Co.,* 19 Cal.App.4th 815, 820, 24 Cal. Rptr.2d 1 (1993)) (citing *Smith v. Smith,* 45 Cal.2d 235, 239, 288 P.2d 497 (1955)). In *Kibbee,* the court found that the children of divorced parents did not reside with their father during a two-week visit to Mexico where (1) the father had relocated to Mexico for an indefinite time, (2) this was the children's first visit with their father since his relocation, (3) there was no agreement as to any future visits, and (4) the children brought with them only enough clothing and toys as required for the two-week period. *Id.* at 62–63, 81

---

**3.** State Farm argues that Abruzzo must be a "permanent" resident, citing to *Jacobs,* 227 Cal.App.3d at 584, 278 Cal.Rptr. 52. The policy at issue therein provided coverage for the named insured and her relatives and per-

sons under age 21 "if *permanent* residents of [her] household ...." *Id.* at 590, 278 Cal. Rptr. 52 (emphasis added). Here, the definition of insured does not specify "permanent" residence.

Cal.Rptr.2d 294. The court did note in dicta, however, that "there could have been no doubt" that the children were residents of their father's household prior to his relocation to Mexico. *Id.* at 62, 81 Cal.Rptr.2d 294. Prior to his relocation, the children visited their father during alternating 7–day periods, it was contemplated that the children would return to the other parent's household every seven days, there were no exceptions contemplated to this schedule and none occurred, and the children maintained clothing, toys and other necessities at both homes. *Id.*[4]

Abruzzo did not spend equal time with his parents because of his school schedule and the geographic challenges presented by his parents' residences. Pursuant to the custody agreement, Abruzzo spent the following periods of time with his mother: (1) 5 weeks each summer; (2) each Christmas school holiday; (3) each Easter school holiday; and (4) all mid-term breaks except one, which was reserved for his father. Order Modifying Custody, attached as Ex. H to PUF. Accordingly, Abruzzo regularly spent considerable time at his mother's home, and there existed a continuing expectation of his return. Moreover, her home was his home during the time he was there. He maintained ongoing friendships there, he had his own room, a pet, and kept clothing and other personal belongings there. PUF Nos. 41–56. Thus, Abruzzo resided with his mother at the time of the incident in question.[5]

█ In addition to being a resident, plaintiffs must also show that Abruzzo was a member of the "named insured's" household.

[A] "household" may be broadly defined as a collection of persons, whether related or not, who live together as a group or unit of permanent or domestic character, with one head, under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interest.

*Id.* at 594. During Abruzzo's visits, he and his mother lived together as a unit of domestic character, with Nucci as the head, under the same roof and directed their attention toward their mutual familial interest.

Notwithstanding the above, State Farm argues that Abruzzo was not a member of the "named insured's" household because he, his mother *and Beck* did not "live together as a group or unit of permanent or domestic character." Pursuant to the modified custody agreement, "Michael Beck, shall under no circumstances reside with mother during visitations or be present during visitations." Order Amending Custody, attached as Ex. H to PUF. State Farm contends that in order to be an "insured" under the policy, plaintiffs must show that Abruzzo, Nucci and Beck "live[d] together as a group or unit of permanent or domestic character."

State Farm's sole authority for this assertion is the policy's requirement that the resident relative must be a member of "your" household. The policy defines "your" as the "named insured listed in the Declarations," and the Declarations Page lists his mother and Beck as "NAMED INSURED." Because Beck was precluded from residing with the mother during Abruzzo's visits, State Farm contends that Abruzzo could not have been a member of "your household."

4. The court's statement undermines State Farm's assertion that residence cannot be found where the duration of the stay is less than two-weeks.

5. The cases relied on by State Farm are readily distinguishable on their facts. *See California Casualty Indemnity v. Frerichs,* 74 Cal. App.4th 1446, 88 Cal.Rptr.2d 858 (1999) (adult son house sitting parents home for 2½ weeks not a resident of parents' household); *Freudenberger v. Allstate Ins. Co.,* 941 F.Supp. 940 (S.D.Cal.1996) (adult son who rented own apartment in separate town was not resident of parents' household despite fact he stored property in their garage and used their address as his permanent mailing address).

As plaintiffs point out, the absurdity of such a construction becomes clear when applied to other provisions in the policy. "Insured" means "you." As discussed, "you" means the "named insured." If the "named insured" means *both* Nucci *and* Beck, neither are individually entitled to any benefits conferred upon "insureds" under the policy. For example, the policy provides:

> If a claim is made or a suit is brought against an **insured** for damages . . ., we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice.

Policy, p. 13 (emphasis in original), attached as Ex. 6 to DUF. Under State Farm's construction, a duty to defend and/or indemnify would only arise where a claim is brought against *both* Nucci and Beck. The court declines to adopt State Farm's narrow construction of the term "named insured," and instead finds it sufficient that Abruzzo resided with his mother as a member of her household.

Accordingly, Abruzzo was an insured under the policy, and at the time State Farm refused to defend him against plaintiffs' claims, it was aware of facts which indicated Abruzzo was a resident of the named insured's household. At a minimum, State Farm had a duty to investigate the matter further before denying Abruzzo's request for a defense.[6]

### B. Occurrence Under The Policy

■ Even if Abruzzo was an insured under the policy, State Farm argues that there was no potential for coverage because the acts alleged in the underlying complaint do not constitute an "occurrence" under the policy. The policy provides coverage for bodily injury and property damage "caused by an occurrence." Policy, p. 13, attached as Ex. 6 to DUF. The policy defines "occurrence" as "an accident, including exposure to conditions, which results in . . . [ ] bodily injury[ ] or [ ] property damage." *Id.*, p. 2. While the term accident is not defined in the policy, California law defines an accident as an "unintentional, unexpected, chance occurrence." *St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5 (1984). State Farm contends that it had no duty to defend Abruzzo because the underlying lawsuit did not arise from an accident.

The underlying complaint includes causes of action for battery and negligence. As the factual basis for his cause of action for battery, Mr. Reshamwalla alleged that: "On or about December 21, 1991,[7] defendants NELSON, MC-DONALD, PROFFITT, [ABRUZZO] AND DOES 76 through 100, conspired to throw debris onto the I–405 into the path of oncoming vehicles. In pursuit of the conspiracy, defendants NELSON, MC-DONALD, PROFFITT, [ABRUZZO] AND DOES 76 through 100 did indeed throw debris onto I–405 into the path of oncoming vehicles." Compl. ¶ 27. He further alleges that: "A large piece of concrete thrown by defendants . . . crashed through plaintiff [HUSSEIN ALI] RESHAMWALLA'S windshield . . . . str[icking] plaintiff RESHAMWALLA squarely in the face and knock[ing] him unconscious." *Id.* ¶ 31, 208 Cal.Rptr. 5. Mr. Reshamwalla's

---

**6.** The cases cited by State Farm which hold that an insurer does not breach its duty to defend where the facts are not in dispute and the dispute is purely legal are inapplicable here where the legal issue is resolved against the insurer. *See, e.g., A–Mark Fin. Corp. v. CIGNA Property and Casualty Cos.-Ins. Co. of N. Am.*, 34 Cal.App.4th 1179, 1180, 40 Cal. Rptr.2d 808 (1995) (holding that for purposes of determining whether a liability insurer has a duty to defend an insured, "a 'potential for indemnity' cannot be based on an unresolved dispute concerning a purely legal question or question of policy interpretation when the question is resolved favorably to the insurer.") (Emphasis added).

**7.** *See, supra,* n. 2.

negligence cause of action expressly incorporated the above allegations and added that defendants "did negligently and with reckless disregard for the safety and rights of others throw debris into the moving traffic causing severe physical and emotional injuries to the plaintiff." *Id.* ¶ 37.

In determining whether a potential for coverage exists, the complaint is to be liberally construed in favor of potential coverage. *See Quan,* 67 Cal.App.4th at 592, 79 Cal.Rptr.2d 134. "Since pleadings are easily amended, the proper focus is on the *facts alleged,* rather than the theories for recovery." *Id.* (citation omitted) (emphasis added). Accordingly, Mr. Reshamwalla's inclusion of a cause of action for negligence did not, by itself, create a potential for coverage. *Id.* at 595–96, 79 Cal.Rptr.2d 134.

■ "An intentional act is not an 'accident' within the plain meaning of the word." *Id.* at 596, 79 Cal.Rptr.2d 134 (citation omitted). Conversely, "coverage is not always precluded merely because the insured acted intentionally and the victim was injured." *Id.* (quoting *Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273 (1989)). Where an insured performs a deliberate act, an accident is present where "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Id.* (quoting *Merced Mutual Ins. Co.,* 213 Cal.App.3d at 50, 261 Cal. Rptr. 273).

Courts have held that allegations that an insured engaged in sexual misconduct, wrongfully terminated an employee, intentionally tore down a fence and failed to share quasi-community property did not give rise to a potential for coverage because such conduct could not reasonably

be interpreted as accidentally occurring. *See Merced Mutual Ins. Co.,* 213 Cal. App.3d at 50, 261 Cal.Rptr. 273 (sexual misconduct); *Quan,* 67 Cal.App.4th at 598, 79 Cal.Rptr.2d 134 (same); *St. Paul Fire & Marine Ins. Co.,* 161 Cal.App.3d at 1199, 208 Cal.Rptr. 5 (wrongful discharge); *Commercial Union Ins. Co. v. Superior Court,* 196 Cal.App.3d 1205, 242 Cal.Rptr. 454 (1987) (same); *Gunderson v. Fire Ins. Exchange,* 37 Cal.App.4th 1106, 44 Cal. Rptr.2d 272 (1995) (intentionally tearing down a fence); *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361 (9th Cir.1991) (refusal to share quasi-community property).

■ Unlike the aforementioned cases, however, one is able to posit a factual construction where throwing debris into traffic might be interpreted as accidentally occurring. For example, the debris could have been thrown at a wall and ricocheted into traffic. Such a scenario would have constituted an accident under the policy.[8]

Since the underlying complaint "presented the potentiality of a judgment based upon non-intentional conduct, and since liability for such conduct would fall within the indemnification coverage, the duty to defend became manifest at the outset." *Gray,* 65 Cal.2d at 276–77, 54 Cal.Rptr. 104, 419 P.2d 168.

## C. Excluded Under The Policy

■ State Farm also argues that there was no potential for coverage because the acts alleged in the underlying complaint were excluded from coverage under the policy. The policy, excluded coverage for bodily injury or property damage "(1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious

---

**8.** Plaintiffs submitted a declaration executed by Abruzzo on March 22, 2000 in opposition to State Farm's motion. Abruzzo's representations contained therein as to his intent, knowledge and actions concerning the incident in question are not relevant to the issue of State Farm's duty to defend. Such a duty is dependent upon the allegations contained in the complaint and the facts known to State Farm at the time of its decision not to defend Abruzzo.

acts of an insured." Policy, p. 13, attached as Ex. 6 to DUF.[9]

When an individual intentionally throws chunks of concrete into freeway traffic, both property damage and bodily injury are to be expected. Likewise, intentionally throwing concrete chunks into freeway traffic constitutes a malicious act. As set forth above, however, the allegations in the underlying complaint were not so limited. Rather, in addition to intentional behavior, plaintiffs alleged that defendants "did negligently and with reckless disregard for the safety and rights of others throw debris into the moving traffic causing severe physical and emotional injuries to the plaintiff." *Id.* ¶ 37.

"Intended" or "expected" injuries are those "that are planned or believed to be substantially certain by the insured." *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal.App.4th 1252, 1261, 66 Cal. Rptr.2d 356 (1997). They do not include "unexpected or accidental injuries that are fortuitous and not planned or intended." *Id.* (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 16–17, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). "Intent and expectation are judged from the standpoint of the insured, who must subjectively plan the injury or subjectively foresee the injury 'as practically certain.' " *Id.* (quoting *Waller*, 11 Cal.4th at 17, 44 Cal. Rptr.2d 370, 900 P.2d 619)). As set forth above, Abruzzo could have intended the throw the debris, but not have intended to throw it into traffic. Rather, an errant piece of debris could have landed in traffic

and injured Mr. Reshamwalla. If true, Abruzzo did not plan to injure Mr. Reshamwalla nor were Mr. Reshamwalla's injuries "practically certain." Accordingly, a *potential* for coverage existed, notwithstanding the expected or intended exclusion.

Additionally, the policy excludes coverage for "willful and malicious acts." While it does not appear that a California court has interpreted the meaning of "willful and malicious" in this context, other courts have distinguished the term from the "intended and expected" exclusion stating that the latter focuses on the tort plaintiff's injuries, while the willful and malicious exclusion focuses on the acts of the insured. *See State Farm Casualty Co. v. Martin*, 186 Ill.2d 367, 376–77, 238 Ill.Dec. 126, 710 N.E.2d 1228 (1999). The court agrees with State Farm that intentionally throwing debris into speeding freeway traffic constitutes a willful and malicious act. As set forth above, however, the allegations in the complaint were not so limited. Rather, the allegations included a scenario in which Abruzzo threw a rock which accidentally landed in traffic. Such an act is not willful and malicious. Accordingly, a potential for coverage existed, notwithstanding the willful and malicious exclusion.

### D. Excluded Under Cal. Ins.Code § 533

State Farm also contends that there was no potential for coverage because Cal. Ins.

---

9. Plaintiffs argue that the underlying default judgment precludes State Farm from asserting this defense. Contrary to plaintiffs' assertion, the underlying default judgment was not based solely on Abruzzo's negligence. Rather, documents submitted in support thereof state that Abruzzo intentionally threw concrete into traffic. *See* Stmt. of Facts In Support of Default J., filed July 6, 1998, at 2:4–6; 2:16–17 (The teenagers, including Abruzzo, decided to "mess up some cars," and "[a]t that point ... began to throw pieces of concrete into the fast lane of the freeway.... A large piece of concrete thrown by the teenag-

ers smashed through Mr. Reshamwalla's windshield" and struck him in the face.); Decl. of Frank D. Blocksberg Regarding Stmt.of Facts in Support of Default J. ("After entering the construction site, Darrel Abruzzo threw concrete at passing cars.") Moreover, the Judgment By Court After Default does not indicate upon what facts and/or evidence the court relied in entering default nor does it make any findings whatsoever. *See* Judgment By Court After Default, attached as Ex. 5 to DUF. Accordingly, nothing in the underlying action precludes State Farm from raising this defense.

Code § 533 bars coverage for injuries caused by an insured's "willful acts."

> Acts of gross negligence or recklessness are not wilful acts within the meaning of section 533.... A 'wilful act' under section 533 will include either an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result. It also appears that a wilful act includes an intentional and wrongful act in which the harm is inherent in the act itself.

*Downey Venture v. LMI Ins. Co.*, 66 Cal. App.4th 478, 500, 78 Cal.Rptr.2d 142 (1998) (internal quotations and citations omitted). As set forth above, the allegations in the complaint do not compel the conclusion that Abruzzo intended to harm anyone or that harm was "highly probable" or "substantially certain" to result. Nor is simply throwing a rock inherently wrongful or harmful. Accordingly, coverage was not precluded by Cal. Ins.Code § 533.

### 2. The Release

Notwithstanding the above, State Farm contends that plaintiffs' claims must fail because any liability on its part, including any obligation arising from the default judgment, is derivative of Abruzzo's liability, and his liability was extinguished by the release.

On April 15, 1996, plaintiffs and Abruzzo entered into a Release and Settlement in which Abruzzo agreed to allow a default judgment to be taken against him in the underlying action and waive all defenses thereto, in exchange for plaintiffs' covenant not to execute the default judgment against Abruzzo and promise to release Abruzzo from any and all claims arising from the concrete throwing incident. The amount of the default judgment was to be determined by a jury trial or by the court in a default prove-up hearing. On August 28, 1998, plaintiffs obtained a default judgment against Abruzzo in excess of $6 million.

State Farm argues that any liability on its part was extinguished by the release. Plaintiffs counter that "[t]he only reasonable reading ... is that [Abruzzo] gave an enforceable judgment in an amount to be determined by a neutral court. In exchange, he received a release of any claims beyond the judgment and a covenant not to execute." Plfs.' Opp'n at 6.

Under California law,

> [t]he court should accord an interpretation which is reasonable (Civ.Code, § 1643) and which gives effect to the intent of the parties as it may be interpreted from their entire agreement rather than one which renders the contract void (Civ.Code, §§ 1650, 1652, 1655, 1656).

*Frankel v. Board of Dental Examiners*, 46 Cal.App.4th 534, 545, 54 Cal.Rptr.2d 128 (1996) (quoting *Addiego v. Hill*, 238 Cal. App.2d 842, 846, 48 Cal.Rptr. 240 (1965)). Indeed,

> a contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable. Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless.

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App.4th 445, 473, 80 Cal.Rptr.2d 329 (1998) (internal citations omitted).

As specified above, plaintiffs' release was given in exchange for his promise to allow a default to be taken against him. To find, as State Farm urges, that the release extinguished the default judgment which was subsequently entered, would be to conclude that the release extinguished the very consideration given therefore. State Farm's argument wholly ignores the intent of the parties. When the Release and Settlement is considered as a whole, it is clear that the parties intended that the default judgment would

be enforceable, notwithstanding the fact that it would necessarily be entered after the release. To find otherwise would render the default judgment and covenant not to enforce provisions meaningless, and, as set forth above, such interpretations are to be avoided. Accordingly, the court finds that the release did not extinguish State Farm's liability.

### 3. Breach Of The Covenant Of Good Faith And Fair Dealing

■ Where an insurer unreasonably refuses to defend, and as a result, the insured suffers a default judgment, the insurer is liable on the judgment, even if it is in excess of policy limits. *See Amato v. Mercury Cas. Co. ("Amato II")*, 53 Cal. App.4th 825, 833–34, 61 Cal.Rptr.2d 909 (1997) ("When the insurer refuses to defend and the insured does not employ counsel and presents no defense, it can be said the ensuing default judgment is proximately caused by the insurer's breach of the duty to defend.") Likewise, an insurer who rejects a reasonable settlement offer within policy limits on coverage grounds "does so at its own risk," for if its denial of coverage is found to have been wrongful, the insurer "is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." *Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, 15 Cal.3d 9, 14–15, 123 Cal.Rptr. 288, 538 P.2d 744 (1975) (quoting *Comunale v.*

*Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 660, 328 P.2d 198 (1958)). This is so even if the insurer does so in "good faith." *Id.* at 16, 123 Cal.Rptr. 288, 538 P.2d 744.

■ On November 22, 1994, plaintiffs' counsel forwarded a policy limits demand in the amount of $300,000 to State Farm through Leslie Price, Abruzzo's mother's attorney retained by State Farm. On December 22, 1994, State Farm responded to plaintiffs' letter and informed plaintiffs' counsel that State Farm would not be representing Abruzzo in the matter, as he was not an insured under the policy. As set forth above, State Farm's refusal to defend Abruzzo was wrongful. Abruzzo and plaintiffs subsequently settled, and Abruzzo agreed, among other things, to allow a default to be entered against him. On August 28, 1998, plaintiffs obtained an unopposed default judgment against Abruzzo in excess of $6 million.

Based on the record, the court cannot find as a matter of law that State Farm's refusal to defend was unreasonable [10] or that the plaintiffs' settlement offer was reasonable.[11] The issue of an insurer's bad faith "is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind." *Dalrymple v. United Services Auto. Ass'n*, 40 Cal.App.4th 497, 511, 46 Cal.Rptr.2d 845 (1995). The question becomes one of law only "when, because there are no conflicting inferences, reasonable minds could not differ." *Id.* (quoting *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.*,

---

**10.** In order to establish that State Farm's refusal to defend was unreasonable, plaintiffs must show that the conduct of State Farm:

> demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet these criteria must be determined on a case by case basis and will depend on the contractual purposes and

> reasonably justified expectations of the parties.

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).

**11.** "[W]henever it is likely that the judgment against the insured will exceed policy limits, 'so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration of good faith of the insured's interest requires the insurer to settle the claim.'" *Johansen*, 15 Cal.3d at 16, 123 Cal.Rptr. 288, 538 P.2d 744 (quoting *Comunale*, 50 Cal.2d at 659, 328 P.2d 198).

5 Cal.App.4th 1445, 1454–1455, 7 Cal. Rptr.2d 513 (1992)). Because reasonable minds could differ as to the reasonableness of State Farm's refusal to defend and no evidence was introduced as to the reasonableness of the settlement offer at the time it was made, summary judgment as to the issue of State Farm's bad faith is inappropriate.

## CONCLUSION

Plaintiff's motion for summary judgment is GRANTED as to the issue of State Farm's contractual duty to defend. The court finds that State Farm breached its contractual duty to defend Abruzzo in the underlying action. Plaintiffs' motion is DENIED in all other respects. State Farm's motion for summary judgment is DENIED.

IT IS SO ORDERED.