[No. A066101. First Dist., Div. Three. Aug. 16, 1995.]

GORDON GUNDERSON et al., Plaintiffs and Appellants, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

## COUNSEL

Henry G. Wykowski and Andrew F. Scher for Plaintiffs and Appellants.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Daniel J. Lanahan, Sue Carol Rokaw and Cheryl A. Hoey for Defendant and Respondent.

## OPINION

**MERRILL, J.**—Gordon and Vera Gunderson appeal from a grant of summary judgment in their action against respondent Fire Insurance Exchange

for breach of their insurance contract and tortious bad faith, arising out of respondent's denial of appellants' tender of the defense of a third party lawsuit. Appellants contend that the trial court erred in granting summary judgment in respondent's favor because there were triable issues of material fact concerning respondent's duty to defend appellants in the underlying lawsuit on the basis of a potential for coverage under the policy. For the reasons which follow we affirm the judgment.[1]

## I

### Factual and Procedural Background

Appellants purchased property in Sonoma in 1986. At the time, they believed on the basis of the grant deed and the assurances of the previous owner that they had the use of an easement for ingress and egress, consisting of a gravel driveway approximately 10 by 200 feet running the entire length of appellants' property and which was located on the adjoining property owned by Mildred R. Ferrando. The easement gave appellants access to the rear portion of their property. For three years after their purchase of the property, the appellants used the easement without incident. From 1963 to 1989, a fence stood along the back end of the Ferrando property, crossing a portion of the easement. In February 1989, appellants removed the portion of the fence crossing the easement.

On March 20, 1989, Ferrando's attorney wrote a letter to appellants, stating that appellants' claim of an easement of right-of-way "came as a complete surprise" to Ferrando; that "[a]t no time" during Ferrando's ownership of their property had appellants' "predecessors in title ever claimed to have a right-of-way" across the property; that Ferrando was "very upset" about appellants' "recent conduct in tearing down the fence" and parking cars on her property; that even if appellants had an easement of right-of-way, "neither of these actions would be permitted under the easement"; and that the act of "tearing down the fence constitute[d] trespass" for which appellants "could be legally liable" to Ferrando. Aside from telling appellants not to park cars on the easement or remove any more fencing or other improvements, Ferrando's attorney asked appellants to "refrain" from using the right-of-way altogether pending the completion of his investigation of the status of the easement.

By letter dated March 23, 1989, Ferrando's attorney memorialized an agreement with appellants that, pending completion of investigation of the

---

[1]In the unpublished portion of this opinion we reject respondent's argument that the appeal should be dismissed as untimely filed; and we rule against the appellants on their contention that the applicable insurance policy has not been identified with the requisite specificity to form the foundation for summary judgment.

matter, neither appellants nor Ferrando would park on the right-of-way; appellants could continue to use the roadway for access to and from the back of their property, but "in a way to minimize the inconvenience" to Ferrando; and appellants would not remove any other fence posts, fencing material or other improvements located near the boundary line. The letter stated that the agreement was without prejudice to either party's position with regard to the easement.

Almost a year later, on March 9, 1990, Ferrando filed a complaint against appellants, entitled a "complaint to quiet title to real property, for declaratory relief, and for injunctive relief." The complaint denied appellants' claim to an easement of right-of-way on Ferrando's property; claimed that Ferrando had exercised "exclusive, complete, actual, open, notorious, hostile and continuous" adverse possession of the right-of-way for more than five years; asserted that any former easement of right-of-way "had previously been extinguished by abandonment"; and asked for declaratory relief quieting Ferrando's title to the right-of-way in fee simple, together with an injunction permanently enjoining appellants from asserting or exercising any claim to the easement. The complaint did not pray for damages. It specifically alleged that Ferrando "has no adequate remedy at law, or otherwise, for the harm and damage threatened to be done by the adverse claims of [appellants], for the reason that [Ferrando] cannot be adequately compensated for her injuries in an action at law, for the amount of damages [she] will sustain as a result of the wrongful acts of [appellants] is not susceptible of accurate computation."

Appellants tendered the Ferrando complaint to their insurance agent, asking that respondent defend and indemnify them in connection with the lawsuit under their homeowners liability policy (the Policy). Respondent's claims office in Santa Rosa received the complaint on March 22, 1990. On March 27, 1990, Robert G. Benson, respondent's branch claims manager, sent appellants a letter denying appellants' claim for a defense of the Ferrando complaint. Benson's letter stated that under appellants' Policy, respondent provided "liability coverage and agree[d] to pay all damage from an occurrence which an insured is legally liable to pay because of bodily injury or property damage covered" by the Policy, and that respondent would defend an insured against any such covered claim or suit. Pointing out that the Ferrando complaint "reflects three causes of action for quiet title, injunctive relief and declaratory relief," and contained "no reference to a claim for bodily injury or property damage," the letter declared that "[i]n view of this fact, Fire Insurance Exchange has no obligation to provide a defense for this Action."

Appellants engaged counsel, who again tendered the Ferrando complaint to respondent for defense and indemnification, by letter dated April 2, 1990.

Benson replied 10 days later with a letter again declining to defend or indemnify appellants under the Policy, on the ground that the Ferrando complaint contained no claims for bodily injury or property damage.[2]

On June 6, 1990, Ferrando filed a verified first amended complaint naming an additional defendant, but otherwise making the same claims for quiet title, declaratory relief and injunctive relief against appellants as before. On August 15, 1990, appellants filed their verified answer and affirmative defenses to Ferrando's first amended complaint. Neither the answer nor the affirmative defenses made any reference or allegation with respect to any bodily injury or property damage.

On February 13, 1991, Ferrando's attorney sent appellants' attorney a letter complaining that appellants had been cutting down trees on Ferrando's property that day, and stating that his office would hold appellants "responsible for any damage to our clients' property, as well as punative [sic] damages for his actions." Later, on April 30, 1991, Ferrando's attorney wrote appellants' attorney to complain that appellants' son was "riding his go cart" on the disputed easement and driveway, was "tearing up" Ferrando's property and disturbing her, and that appellants "have apparently resumed their efforts to destroy" Ferrando's fence. The letter requested written confirmation within 10 days "that this conduct will stop so that it will not be necessary . . . to seek injunctive relief." Appellants did not submit these letters or claims to respondent for any response.

On August 1, 1991, appellants filed a motion for summary judgment in the Ferrando action. Their motion and attached declarations made no mention of any property damage to Ferrando's property. Prior to trial, appellants settled the lawsuit with Ferrando.

On September 4, 1992, appellants filed the instant lawsuit against respondent, naming Farmers Insurance Group of Companies (hereinafter sometimes referred to as Farmers), and alleging breach of insurance contract and breach of the implied covenant of good faith and fair dealing. By letter dated

---

[2]In pertinent part, Benson's letter to appellants' attorney stated: "Our policy is a Special Form Homeowners describing property at 19051 Olive Street in Sonoma.

"This policy provides personal liability coverage for damages which an insured becomes legally obligated to pay because of bodily injury or property damage resulting from an occurrence to which this coverage applies.

"An occurrence means an accident including exposure to conditions which result during the policy period in bodily injury or property damage.

"The Complaint is to Quiet Title to Real Property, and for Declaratory Relief and Injunctive Relief.

"There is no cause of action for bodily injury or property damage. Therefore, no duty to indemnify or defend the insured exists."

October 27, 1992, respondent's attorney told appellants' attorney that the name of the company that had issued appellants' insurance Policy was Fire Insurance Exchange, and that that was the "correct entity" to sue. On November 11, 1992, appellants filed a first amended complaint naming Fire Insurance Exchange as the defendant, rather than Farmers.[3] Respondent answered this first amended complaint, denying all allegations and asserting, among other things, that appellants' action was barred by the applicable provisions of the Policy.

On November 12, 1993, respondent filed a motion for summary judgment arguing that there was no potential for coverage of the Ferrando claim under the terms of the Policy, and therefore no duty to defend as a matter of law. Among other "undisputed material facts," respondent stated that Fire Insurance Exchange had issued the pertinent Policy to appellants. In opposing the motion, appellants challenged this statement, pointing out that respondent had provided conflicting information indicating that Farmers may have issued the Policy.

At the hearing on respondent's motion for summary judgment, the trial court determined that neither the face of the Ferrando complaint nor the extrinsic evidence available at the time appellants tendered the defense to respondent indicated any potential for coverage. On January 28, 1994, the trial court issued its order granting summary judgment, stating: "The undisputed facts show that neither the face of the underlying [Ferrando] complaint . . . nor any extrinsic evidence available at the time the defense was tendered indicate a potential for coverage. The undisputed facts establish that there was no ambiguity in the complaint to alert the insurance carrier of a duty to defend and that there was no potential for coverage on the subject policy."

On February 1, 1994, respondent's attorney served and filed a document entitled "Notice of Entry of Judgment." On February 16, 1994, appellants filed a motion for reconsideration of the order granting respondent's motion for summary judgment. On February 25, 1994, Susana Magenheimer, a policy writing supervisor for Farmers, informed respondent's attorney that "a mistake had been made," and that the entity that had issued the subject Policy to appellants was actually Farmers Insurance Exchange, not Fire Insurance Exchange. On February 28, 1994, respondent's attorney informed appellants' attorney by letter of the mistake in the name of the issuing insurance entity. Except for the name of the correct entity, there was no change in the content, provisions or terms of the Policy.

---

[3]Farmers Insurance Group of Companies encompasses several different insurance "exchanges," including Fire Insurance Exchange and Farmers Insurance Exchange.

Respondent filed opposition to appellants' motion for reconsideration on March 1, 1994, arguing that appellants had not produced any evidence to raise any new questions with regard to the undisputed facts on which the trial court based its decision, as required by Code of Civil Procedure section 1008, subdivision (a). In addition, respondent asked the trial court to correct the order granting summary judgment to name Farmers Insurance Exchange as the entity that actually issued the subject Policy, rather than Fire Insurance Exchange. On May 10, 1994, after a hearing, the trial court denied the motion for reconsideration, and directed that judgment be entered. The order also denied respondent's request that the caption of the earlier order granting summary judgment be amended to designate respondent as Farmers Insurance Exchange.

II-IV*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

V

POTENTIAL FOR COVERAGE

*Facts Extrinsic to the Complaint*

██ Appellants' principal argument is that respondent knew or should have known that there was a potential that Ferrando would make a property damage claim against them, and therefore had a duty to defend upon appellants' tender of the Ferrando lawsuit. Appellants rely on the California Supreme Court decision in *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153] to argue that respondent breached its duty to investigate facts and allegations extrinsic to the face of the Ferrando complaint in determining its duty to defend. In our opinion, appellants have misapplied the principles expressed in Montrose to the facts of this case.

In *Montrose*, the Supreme Court reviewed the "familiar principles governing adjudication of the insurer's duty to defend." It reaffirmed the rules established in *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] that the duty to defend is broader than the duty to indemnify, that a liability insurer must defend a suit which potentially makes claims within the coverage of the policy, and that facts extrinsic to the allegations of the complaint may give rise to a duty to defend when they reveal a possibility that the claim may be covered by the terms of the

*See footnote, *ante*, page 1106.

insurance policy. On the other hand, the Supreme Court also reaffirmed that the extrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit; and that the duty to defend ceases as soon as it has been shown that there is *no* potential for coverage. (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at pp. 295-296; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 276; *Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538-539 [12 Cal.Rptr.2d 629]; *Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal.Rptr. 493].)

■  Thus, contrary to appellants' position, an insurer does not have a continuing duty to investigate whether there is a potential for coverage. If it has made an informed decision on the basis of the third party complaint and the extrinsic facts *known* to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit. (*Hurley Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 10 Cal.App.4th at pp. 538-539; *Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d at p. 263; *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296].) The duty to defend a lawsuit which raises a *possibility* of liability, but is eventually shown to be groundless, does not equate with a duty to defend a lawsuit which raises *no* potential liability. (*Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 776-777 [215 Cal.Rptr. 416].)

An insured may not trigger the duty to defend by speculating about extraneous "facts" regarding potential liability or ways in which the third party claimant might amend its complaint at some future date. This approach misconstrues the principle of "potential liability" under an insurance policy. "Although an insurer's duty to defend is broader than the duty to indemnify, the duty to defend depends upon *facts* known to the insurer at the inception of the suit. [Citations.] . . . [¶] Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage. [Citations.] A corollary to this rule is that the insured may not speculate about unpled third party claims to manufacture coverage." (*Hurley Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 10 Cal.App.4th at p. 538.) "We look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend . . . ." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 275.) ■  Thus, the issues here are what facts respondent knew at the time appellants tendered the defense of the Ferrando lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether these *known facts* created a potential for coverage under the terms of the Policy.

In pertinent part, the Policy at issue provided coverage as follows: "We shall pay all damage from an occurrence which an insured is legally liable to pay because of bodily injury or property damage covered by this policy." In addition, the Policy provided: "At our expense we shall defend an insured against any covered claim or suit." The Policy defined "property damage" as "physical injury to or destruction of tangible property, including loss of its use." It defined "occurrence" as "a sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured."[4]

In order to trigger coverage under these provisions of the Policy, a third party must have suffered tangible "property damage" or "bodily injury" that appellants "neither expected nor intended" to occur. There are no allegations in the underlying Ferrando complaint that create any potential for coverage under these provisions. The complaint contained three *equitable* causes of action to quiet title to real property, for declaratory relief, and for injunctive relief, disputing appellants' claim to an easement of right-of-way on Ferrando's property on the basis of Ferrando's assertions of her adverse possession and appellants' abandonment. The complaint asked only for declaratory relief quieting Ferrando's title to the right-of-way in fee simple and an injunction permanently enjoining appellants from exercising any rights to the easement. It specifically alleged that Ferrando had no adequate remedy at law for appellants' adverse claims, because the amount of damages she would sustain as a result of the appellants' "wrongful acts . . . is not susceptible of accurate computation." There were no claims of either tangible property damage or bodily injury in the complaint.

Appellants nevertheless assert that there was a potential for liability under the Policy because Ferrando *could* have made a claim for "physical injury to or destruction of tangible property" in connection with the fence across a portion of the easement which appellants removed at the outset of the dispute. They point to complaints made in letters by Ferrando's attorney; Ferrando's interrogatory responses mentioning "property damage" based on removal of the fence and damage to shrubbery and trees; deposition testimony by Ferrando discussing appellants' removal of the fence; Ferrando's assertion as an undisputed fact that the fence had obstructed the easement until appellants removed it; and Vera Gunderson's deposition statement that when she tendered the Ferrando complaint to respondent, an unidentified "elderly man" remarked "[o]nly if there was a fence involved." On this basis, they contend that respondent had sufficient extrinsic evidence of a potential property damage claim under the Policy to create a duty to defend the Ferrando lawsuit.

[4]The Policy defined "bodily injury" as "bodily harm, sickness or disease, including care, loss of services and death resulting from the injury."

The contention fails for several reasons. First, under the Policy definition of a covered "occurrence," the property damage for which respondent agreed to provide liability coverage had to be "neither expected nor intended by the insured." It is undisputed that appellants intentionally tore down the disputed fence. "An intentional act is not an 'accident' within the plain meaning of the word. [Citations.]" (*Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435], fn. omitted.) Because any damage to the fence could not have arisen from an accidental "occurrence" within the meaning of the insuring clause, any anticipated property damage claims arising from appellants' act would not be covered under the terms of the Policy. (*Hurley Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 10 Cal.App.4th at p. 539.) For this reason alone, respondent would have no duty to defend.

Second, none of the allegations concerning damage to the fence, as found in the several letters of Ferrando's attorney and in her responses to discovery requests, were *ever* incorporated in her complaint against appellants. Ferrando's attorney himself stated in a declaration under penalty of perjury that he prepared both the original Ferrando complaint and the first amended complaint; that "[n]either of these pleadings alleges claims involving property damage or seeks damages for property damage"; and that "[a]t no time did I seek to amend these pleadings to allege such claims or indicate that I intended to do so." It is clear that any such allegations would have conflicted with Ferrando's claims of title to the right-of-way based on appellants' abandonment. In context, Ferrando's own interrogatory responses, statements in her deposition, and statement of undisputed fact regarding the removal of the fence were concerned either with establishing the time period for her claim of adverse possession through the obstruction of the easement by the fence itself, or were made in response to appellants' own attempts to establish that they had not abandoned the easement.

Third, there was insufficient foundation for the ambiguous hearsay statement "only if there was a fence involved" to be considered as evidence sufficient to raise a triable issue of fact for summary judgment purposes. Mrs. Gunderson described the person making the statement simply as an "elderly man" present in the insurance office at the time she brought the Ferrando complaint to respondent. She acknowledged that she did not know if the man was an agent, or even an employee of respondent at all. There was absolutely no evidence that the man was involved in any way with respondent's coverage determination of appellants' claims. Even if the statement could be considered as evidence, it has no impact on the undisputed material fact that Ferrando never made a claim for property damage against appellants. An offhand remark or opinion by a person not shown to be involved in

the matter in any way can have no effect on the factual issue of whether there was a potential for coverage under the Policy.

Fourth, most of this alleged extrinsic evidence of a potential claim for property damage arose *after* Ferrando's complaint was filed and tendered to respondent for defense. Respondent was entitled to base its determination of whether or not to accept the tender on the facts available to it at that time. Once it determined on the basis of the lawsuit itself and the facts known to it at that time that there was no potential for coverage, it did not have a continuing duty to investigate or monitor the lawsuit to see if the third party later made some new claim, not found in the original lawsuit. (*Hurley Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 10 Cal.App.4th at pp. 538-539; *Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d at p. 263; *State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d at p. 548.) Had any of these statements in the letters from Ferrando's attorney or in discovery actually raised a potential claim for property damage covered under the Policy, appellants could have notified respondent at the time. Appellants never brought any of this information to respondent's attention. In the absence of any new tender of defense from appellants, respondent had no way to know of these new extrinsic facts, and no obligation to find them out by itself.

In this case, as in *Hurley Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 10 Cal.App.4th 533, Ferrando's complaint, on its face, alleged no facts showing a potential for coverage. The extrinsic "facts" regarding potential liability for property damage have come from speculation about how Ferrando might have (but did not) amend her complaint at some future date. Just as a third party complainant is not the arbiter of the coverage of an insurance policy, so is it also the rule that insureds themselves may not manufacture coverage by speculating about unpled third party claims. (*Id.* at pp. 538-539.) Here, there was no potential for coverage to trigger any duty to defend on respondent's part.

*Loss of Use of Property*

Appellants contend that even if there was no potential claim for destruction of property, respondent still had a duty to defend because there was a potential property damage claim for "loss of use" of the disputed easement. We disagree.

The definition of "property damage" in the Policy is "physical injury to or destruction of tangible property, including loss of its use." Appellants argue that the phrase "including loss of its use" is meant to include "loss of use" of

tangible property, whether or not there has been physical injury or destruction of such property. Respondent maintains that the phrase "loss of its use" modifies and refers only to tangible property that has itself been physically injured, damaged or destroyed, and that the Policy coverage for property damage therefore extends to loss of use of tangible property only where there is physical damage or destruction of the property accompanying the loss of use. Citing *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d 263, appellants urge that the Policy language is ambiguous, and that any ambiguity must be resolved against respondent insurer by construing the Policy to provide coverage for loss of use of the right-of-way, even if there is no physical damage to or destruction of tangible property.

■ Where the underlying facts are not in dispute, construction of the language of an insurance policy is a matter of law. (*Northbrook Excess & Surplus Ins. Co.* v. *Coastal Rescue Systems Corp.* (1986) 182 Cal.App.3d 763, 767 [227 Cal.Rptr. 639].) On appeal, we are not bound by the trial court's interpretation of the Policy language, but must make our own independent interpretation. (*Suarez* v. *Life Ins. Co. of North America* (1988) 206 Cal.App.3d 1396, 1402 [254 Cal.Rptr. 377]; *Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 571 [218 Cal.Rptr. 407].)
■ The language of the insurance policy must be interpreted in light of its plain and ordinary meaning, unless the Policy clearly indicates to the contrary. "When the language is clear a court should not give it a strained construction to impose on the insurer a liability it has not assumed. [Citation.] An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected. [Citation.] 'Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer [citation], strict construction does not mean strained construction. [Citations.] We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. [Citation.]' [Citation.]" (*Suarez* v. *Life Ins. Co. of North America, supra*, 206 Cal.App.3d at pp. 1402-1403.)

■ Here, the plain and ordinary meaning of the "property damage" definition in the Policy supports respondent's construction. The phrase "including loss of its use" modifies the entire preceding statement that "[p]roperty damage means physical injury to or destruction of tangible property." Grammatically, the word "its" in the phrase "its use" refers to "tangible property." It is not logical to interpret the entire sentence as stating that the mere loss of use of any tangible property, without physical injury or destruction, may constitute "property *damage*." Such a construction would require respondent to provide coverage regardless of whether any actual

physical damage to the property occurred, contrary to the plain meaning of the Policy definition, which requires some kind of *physical* damage to *tangible* property. In context, the phrase "including loss of its use" refers to the loss of use of tangible property that suffers some physical injury or destruction.

The Ferrando lawsuit alleged only nonphysical injuries from the appellants' assertion of adverse claims to the easement, including depreciation of the value of Ferrando's property. Ferrando sought solely to quiet title in the property and enjoin appellants from using the easement. " 'Understood in its plain and ordinary sense, "tangible property" means "property (as real estate) having physical substance apparent to the senses" (Webster's Third New Internat. Dict. (1968) p. 2337). To construe the explicit words "tangible property" to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies. Such an interpretation would rewrite the policies to fasten on the insurers a liability they have not assumed.' [Citation.]" (*Warner* v. *Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029, 1034 [281 Cal.Rptr. 635].) Thus, pure rights in property, such as those claimed to have been lost by Ferrando in her underlying complaint, are by definition not the kind of physical damage or injury to tangible property necessary to trigger coverage under the Policy provisions. (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218-219 [169 Cal.Rptr. 278].)

We conclude that the definition of "property damage" in the subject Policy did not provide coverage for the claims made in the underlying Ferrando action, and consequently that respondent had no duty to defend the lawsuit. Because there was no breach of the insurance contract, appellants' bad faith claim also fails. (*McMillin Scripps North Partnership* v. *Royal Ins. Co.* (1993) 19 Cal.App.4th 1215, 1222-1223 [23 Cal.Rptr.2d 243].) The trial court properly granted summary judgment on respondent's motion.

VI

DISPOSITION

The judgment is affirmed.

Chin, P. J., and Corrigan, J., concurred.