[No. B224584. Second Dist., Div. Three. June 10, 2011.]

ULTA SALON, COSMETICS & FRAGRANCE, INC., Plaintiff and
Appellant, v.
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
Defendant and Respondent.

## COUNSEL

Latham & Watkins, Peter K. Rosen and Christine Chuang for Plaintiff and Appellant.

Riedl, McCloskey & Waring, Sonia S. Waisman and Jeffrey N. Labovitch for Defendant and Respondent.

## OPINION

KLEIN, P. J.—Plaintiff and appellant Ulta Salon, Cosmetics & Fragrance, Inc. (Ulta), appeals an order of dismissal following the sustaining without leave to amend of a demurrer interposed by defendant and respondent Travelers Property Casualty Company of America (Travelers) to Ulta's first amended complaint.[1]

The essential issue presented in this insurance coverage action is whether the trial court properly held Travelers had no duty to defend or indemnify Ulta, its insured, in an underlying action against Ulta alleging violations of Proposition 65, the California Safe Drinking Water and Toxic Enforcement Act of 1986. (Health & Saf. Code, § 25249.5 et seq.)[2,3]

---

[1] The record contains no order of dismissal. It contains only an order sustaining Travelers's demurrer without leave to amend. We shall order the trial court to enter, nunc pro tunc as of March 16, 2010, the date of the order sustaining the demurrer without leave to amend, an order of dismissal (Code Civ. Proc., § 581d), and we construe the notice of appeal to refer to said order. (*Donohue v. State of California* (1986) 178 Cal.App.3d 795, 800 [224 Cal.Rptr. 57].)

[2] All further statutory references are to the Health and Safety Code, unless otherwise specified.

[3] Proposition 65 is " 'a remedial statute intended to protect the public,' " which seeks to prevent contamination of sources of drinking water and requires "businesses to warn individuals about carcinogens and reproductive toxins to which they are exposed through consumer transactions, employment, and the environment." (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 462, 461 [110 Cal.Rptr.2d 627].) To reinforce the remedial and equitable nature of the act, section 1 of Proposition 65 states: " 'The people of California find that hazardous chemicals pose a serious potential threat to their health and well-being, that state government agencies have failed to provide them with adequate protection, and that these

We conclude Travelers did not owe Ulta a defense because neither the pleadings nor the extrinsic evidence in the underlying action revealed a possibility the Proposition 65 claim being asserted against Ulta might be covered by the Travelers policy. Therefore, the order of dismissal is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The policy.*

On or about April 17, 2006, Travelers issued a $10 million commercial ceneral liability policy to Ulta, a nail products manufacturer, affording Ulta coverage from March 15, 2006, to March 15, 2007 (the policy).

The policy required Travelers to defend "any suit" against Ulta seeking damages that Ulta "becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.' " The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

### 2. *The underlying Proposition 65 action against Ulta.*

On August 15, 2007, one Christine Deubler filed the underlying action "on behalf of the general public" against numerous manufacturers, distributors and/or sellers of nail products, including Ulta, seeking civil penalties and injunctive relief. The Deubler complaint contained a single cause of action for violation of Proposition 65, based on allegations the defendants' nail products contain DBP (dibutyl phthalate), a reproductive toxin, and that the State of California in December 2005 officially listed DBP as a chemical known to cause reproductive toxicity. The complaint alleged the defendants knew their respective nail products contain DBP, that consumers are exposed to DBP through the intended and foreseeable use of the nail products, and that the defendants failed to give consumers a clear and reasonable warning regarding the reproductive toxicity caused by exposure to DBP.

failures have been serious enough to lead to investigations by federal agencies of the administration of California's toxic protection programs. The people therefore declare their rights: [¶] (a) To protect themselves and the water they drink against chemicals that cause cancer, birth defects, or other reproductive harm. [¶] (b) To be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm. [¶] (c) To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety. [¶] (d) To shift the cost of hazardous waste cleanups more onto offenders and less onto law-abiding taxpayers.' (Ballot Pamp., Gen. Elec. (Nov. 4, 1986) text of Prop. 65, § 1, p. 53, reprinted in Historical and Statutory Notes, 40E West's Ann. Health & Saf. Code (2006 ed.) foll. § 25249.5, p. 322.)" (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 180–181, fn. 19 [62 Cal.Rptr.3d 722] (*DiPirro*).)

Pursuant to Proposition 65, the Deubler complaint sought civil penalties of $2,500 per day for each individual exposed to DBP from the use of the defendants' nail products, as well as an injunction barring defendants from offering their nail products for sale without disclosing the presence of DBP in the products.

### 3. *The coverage dispute.*

On or about October 8, 2007, Ulta received notice of the Deubler lawsuit. Ulta notified Travelers of the suit, provided Travelers with a copy of the complaint, and requested that Travelers defend and indemnify Ulta pursuant to the terms of the policy. On October 17, 2007, Travelers denied coverage of the Deubler lawsuit. On January 7, 2009, Travelers reiterated its denial, in response to a December 2, 2008 request by Ulta that Travelers withdraw its letter denying coverage.

Ulta allegedly incurred $241,684 to defend against the Deubler lawsuit, as well as $25,000 to settle the lawsuit, for a total of $266,684.

### 4. *The instant bad faith action.*

#### a. *Pleadings.*

On October 16, 2009, Ulta commenced this action against Travelers, and filed the operative first amended complaint on January 4, 2010. Ulta pled causes of action against Travelers for breach of contract, declaratory relief, breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. Ulta alleged Travelers at all times was obligated to defend and indemnify it under the policy, and that Travelers's refusal to perform its obligations was unreasonable and in bad faith.

#### b. *Travelers's demurrer.*

Travelers demurred to the first amended complaint, contending it had no duty to defend or indemnify Ulta under the policy because the policy only afforded coverage for sums Ulta became legally obligated to pay as damages because of bodily injury or property damage, and the Deubler lawsuit did not allege bodily injury or property damage. The Deubler lawsuit solely sought civil penalties under Proposition 65 and injunctive relief, and those forms of relief were not covered or potentially covered damages under the policy. Further, absent a duty to defend, there can be no bad faith.

c. *Ulta's opposition to the demurrer.*

In its opposition papers, Ulta contended the Deubler complaint alleged facts giving rise to the *potential* for coverage. Ulta argued that although the Deubler complaint originally was brought to pursue civil penalties for Ulta's failure to warn about nail products containing DBP, "the face of the [Deubler] complaint also includes allegations regarding exposure to DBP, which purportedly is a chemical 'known to cause cancer,' that caused birth defects and was 'known to cause reproductive toxicity.' . . . Thus, the facts as found on [the] face of the [Deubler] complaint potentially give rise to bodily injury claims. Bodily injury is squarely within the realm of 'potentialities' of pleading and it is fairly inferable that Deubler contemplated bodily harm as a result of the alleged Proposition 65 violation."

Ulta further argued civil penalties constitute covered damages under the policy, and that the policy contains no exclusion for civil penalties.

d. *Trial court's ruling.*

On March 16, 2010, after hearing the matter, the trial court sustained Travelers's demurrer to the first amended complaint without leave to amend. The trial court's rationale is set forth in its minute order, which states in pertinent part:

"The policy provides coverage only for sums that Ulta 'becomes legally obligated to pay as damages because of "bodily injury" or "property damage." ' In the underlying Deubler lawsuit, Deubler asserted a single cause of action for violation of Proposition 65 for which she, on behalf of the general public, sought injunctive relief and penalties as provided [in] Health & Safety Code § 25249.7. There was no allegation that Deubler or any other person had suffered bodily injury as a result of exposure to any of Ulta's products or that they were even exposed to Ulta's products. '[*Proposition 65*] *is informational and preventative rather than compensatory in its nature and function.* The statutory damages available under the Act in the nature of civil penalties do not grow out of a claim for moneys due and owing or for personal harm or property damages that have resulted from discharge of pollutants or other toxic chemicals. . . . [Citations.] Rather, Proposition 65 is distinguishable in its fundamentally equitable purpose and remedy: *to facilitate the notification of the public of potentially harmful substances, so informed decisions may be*

*made by consumers on the basis of disclosure.* [Citations.] An award of civil penalties under the Act is a statutory punitive exaction determined on the basis of equitable principles, designed to deter misconduct and harm, *not to compensate the plaintiff for actual damages sustained.' DiPirro v. Bondo Corp.*[, *supra*,] 153 Cal.App.4th 150, 182–183. Because the *Deubler* complaint neither alleged any facts giving rise to a claim for damages because of bodily injury nor did it allege any bodily injury (or property damage), . . . plaintiff Ulta did not become legally obligated to pay damages for bodily injury, and the policy was not triggered." (Italics added.)

Further, "[g]iven the nature of the *Deubler* complaint, any assertions that Deubler could have amended the complaint to assert a personal injury claim are unsupported speculation, where there is no showing that Deubler suffered any personal harm, that she was exposed to an Ulta product containing DBP, and that she suffered any bodily injury from such exposure, and that she could have but chose not to allege these facts. Because the underlying complaint did not seek covered damages, there was no potential for coverage."

In addition to finding Ulta had failed to state a cause of action, the trial court denied leave to amend, finding Ulta had not met its burden to show in what manner it could amend the complaint and how that amendment would change the legal effect of its pleading. "Because of the allegations of the complaint in *Deubler*, Ulta has not met this burden and cannot do so, absent tenuous and farfetched speculation about unpled facts in an underlying case that has been settled."

This appeal followed.

## CONTENTIONS

Ulta contends the trial court erred in sustaining the demurrer because there was a potential for coverage, and that the trial court abused its discretion in sustaining the demurrer without leave to amend because there is a reasonable possibility that amendment could cure any defect in the pleading.[4]

---

[4] During the briefing stage, we granted a motion by Ulta to present additional evidence on appeal in order to determine whether leave to amend is warranted. "As a general rule, on appeal we only consider evidence that was presented to the trial court in the first instance. [Citation.] However, this is an appeal from the trial court's decision to sustain a demurrer without leave to amend. On such an appeal, the plaintiff bears the burden of showing the trial court abused its discretion because there is a reasonable possibility the plaintiff could amend the complaint to state a cause of action. [Citation.] *Such a showing may be made based on evidence that is presented for the first time in the appellate court.* [Citation.] Here, we will consider the facts appellant cites when deciding whether there is a reasonable possibility

## DISCUSSION

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Our review is de novo. (*Ibid.*)

2. *Insured is owed a duty only when there is a potential for coverage under the policy.*

■ In *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153], the Supreme Court "reviewed the 'familiar principles governing adjudication of the insurer's duty to defend.' It reaffirmed the rules established in *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] that the duty to defend is broader than the duty to indemnify, that a liability insurer must defend a suit which potentially makes claims within the coverage of the policy, and that facts extrinsic to the allegations of the complaint may give rise to a duty to defend when they reveal a possibility that the claim may be covered by the terms of the insurance policy. On the other hand, the Supreme Court also reaffirmed that the extrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit; and that the duty to defend ceases as soon as it has been shown that there is *no* potential for coverage. [Citations.]" (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1113–1114 [44 Cal.Rptr.2d 272] (*Gunderson*).)

---

appellant could amend [its] complaint." (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 5, fn. 2 [15 Cal.Rptr.3d 25], italics added.)

Here, Ulta can state a cause of action against Travelers only if it establishes a potential for coverage under the Travelers policy for the claim asserted against Ulta in the underlying action.

3. *The Deubler complaint did not seek bodily injury damages and therefore did not seek damages covered under the policy.*

The Deubler complaint alleged it was brought "on behalf of the general public" pursuant to section 25249.7.[5] The Deubler complaint did not allege that plaintiff had purchased or used Ulta nail products. There was no allegation that Deubler personally suffered any injury due to exposure to Ulta's nail products.

The sole cause of action in the Deubler complaint was for violation of section 25249.5 et seq., based on the allegation that Ulta and the other defendants failed to provide "clear and reasonable warnings" within the meaning of sections 25249.6 and 25249.11.[6] However, the civil penalties recoverable for those statutory violations "do not grow out of a claim for moneys due and owing or for personal harm or property damages that have resulted from discharge of pollutants or other toxic chemicals . . . ." (*DiPirro, supra*, 153 Cal.App.4th at p. 183.)

To reiterate the trial court's ruling, because the Deubler complaint neither alleged any facts giving rise to a claim for damages because of bodily

---

[5] Section 25249.7, pertaining to enforcement of Proposition 65, states in pertinent part at subdivision (d): "*Actions pursuant to this section may be brought by any person in the public interest* if both of the following requirements are met: [¶] (1) The private action is commenced more than 60 days from the date that the person has given notice of an alleged violation of Section 25249.5 or 25249.6 that is the subject of the private action to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator. . . . [¶] (2) Neither the Attorney General, any district attorney, any city attorney, nor any prosecutor has commenced and is diligently prosecuting an action against the violation." (Italics added.)

[6] Section 25249.6 states in pertinent part: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity *without first giving clear and reasonable warning* to such individual . . . ." (Italics added.)

Section 25249.11 provides in relevant part at subdivision (f): " 'Warning' within the meaning of Section 25249.6 need not be provided separately to each exposed individual and may be provided by general methods such as labels on consumer products, inclusion of notices in mailings to water customers, posting of notices, placing notices in public news media, and the like, *provided that the warning accomplished is clear and reasonable.*" (Italics added.)

injury nor did it allege any bodily injury (or property damage), Ulta did not become legally obligated to pay damages for bodily injury, and the policy was not triggered.

In an attempt to show a *potential* for coverage, Ulta asserts that although the Deubler complaint "may have originally been brought to pursue a penalty for [Ulta's] failure to warn about nail products containing DBP[, n]evertheless, this does not preclude potential for coverage based on actual allegations regarding exposure to DBP. . . . It is apparent from the pleading that Deubler contemplated bodily harm when bringing her Proposition 65 cause of action by repeatedly emphasizing the toxic nature of products allegedly manufactured or sold by [Ulta]. As such, the facts as found on the face of the complaint give rise to potential bodily injury claims."

■ The trial court properly considered and rejected this argument. Case law recognizes that an "insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability *or ways in which the third party claimant might amend its complaint at some future date.* This approach misconstrues the principle of 'potential liability' under an insurance policy. 'Although an insurer's duty to defend is broader than the duty to indemnify, the duty to defend depends upon *facts* known to the insurer at the inception of the suit. [Citations.] . . . [¶] Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage. [Citations.] *A corollary to this rule is that the insured may not speculate about unpled third party claims to manufacture coverage.'* (*Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* [(1992)] 10 Cal.App.4th [533,] 538 [12 Cal.Rptr.2d 629].)" (*Gunderson, supra,* 37 Cal.App.4th at p. 1114, italics added.)

Therefore, Travelers had no duty to defend based on unpled claims by Deubler that might implicate the policy.

### 4. *No abuse of discretion in denial of leave to amend.*

Finally, Ulta proffers extrinsic evidence on appeal to show a reasonable possibility it is capable of amending the pleading to cure any defect with respect to Travelers's obligation to defend the Deubler action. (See fn. 3, *ante.*) Specifically, Ulta relies on the following:

(1) In Deubler's interrogatory responses, she asserted Ulta sold at least one nail polish product in California containing DBP during the relevant time period, and that any nail polish product containing DBP would be deemed in violation of Proposition 65.

(2) In Deubler's discovery responses, she asserted bodily injury could result from exposure of DBP through application via fingernails, toenails and human skin, and that studies showed "percutaneous absorption of chemicals," i.e., absorption of chemicals through the skin.

(3) An expert witness declaration by Dr. James Embree, a toxicologist, opined consumer exposure to DBP could occur due to direct dermal contact with the nail polish or through inhalation of DBP released from the applied polish.

(4) In the settlement agreement between Deubler and Ulta, Deubler released all current and future claims against Ulta, including all claims of bodily injury.

Ulta's reliance on this proffer of extrinsic evidence is unavailing for a number of reasons.

First, "the extrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit . . . ." (*Gunderson, supra*, 37 Cal.App.4th at p. 1114.) There is no contention by Ulta that Travelers had timely knowledge of the above facts.

Moreover, the extrinsic evidence shows at most that Deubler may have been exposed to an Ulta product containing DBP. However, mere *exposure* to a chemical that may cause cancer, birth defects, or other reproductive harm, is not the same as suffering bodily injury as a consequence of such exposure. The Deubler lawsuit pled nothing more than a failure to give clear and reasonable warnings in violation of Proposition 65.

Ulta would have this court infer from the discovery responses in the Deubler action that plaintiff Deubler "contemplated bodily injury and her complaint could have very likely been amended to include bodily injury claims." The argument fails. As discussed, "[a]n insured may not trigger the duty to defend by speculating about . . . *ways in which the third party claimant might amend its complaint at some future date*." (*Gunderson, supra*, 37 Cal.App.4th at p. 1114, italics added.)

## DISPOSITION

The trial court is directed to enter, nunc pro tunc as of March 16, 2010, an order of dismissal. That order is affirmed. Travelers shall recover its costs on appeal.

Croskey, J., and Kitching, J., concurred.