**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUTODISTRIBUTORS, INC.; STEVEN
SCHNEIDER,

      Plaintiffs-Appellants,

v.

NATIONWIDE E&S SPECIALTY; et al.,

      Defendants-Appellees.

No.    22-16445

D.C. No. 4:21-cv-06204-HSG

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Submitted November 15, 2023[**]
San Jose, California

Before: MURGUIA, Chief Judge, and GRABER and FRIEDLAND, Circuit
Judges.

AutoDistributors, Inc. and Steven Schneider (collectively

"AutoDistributors") appeal the district court's order granting judgment on the

pleadings in favor of Scottsdale Insurance Company, Nationwide E&S Specialty,

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Scottsdale Indemnity Company, and National Casualty Company (collectively "Defendants") in this insurance coverage dispute. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

This case arises out of an underlying dispute between Sixt Franchise USA, LLC, Sixt Rent a Car, LLC (collectively "Sixt"), and AutoDistributors. Sixt Franchise and AutoDistributors entered into a Franchise Agreement that allowed AutoDistributors to operate a Sixt rental car franchise and use Sixt's trademarks in connection with that franchise. Sixt then sued AutoDistributors, alleging that AutoDistributors violated the Franchise Agreement by operating a used-car-sales business at the franchise location and using Sixt's trademarks in connection with that business. AutoDistributors tendered suit to its insurer Scottsdale Insurance Company ("Scottsdale"), and Scottsdale denied coverage. AutoDistributors then sued Defendants for breach of contract and breach of the implied covenant of good faith and fair dealing. The district court ruled for Defendants, holding that Scottsdale had no duty to defend AutoDistributors.

An insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 (Cal. 1966). To determine whether there is a duty to defend, the insurer compares the "terms of the policy" with the "allegations of the complaint" and any other facts that are "reasonably inferable, or otherwise known." *Scottsdale Ins. Co. v. MV Transp.*,

22-16445

115 P.3d 460, 466 (Cal. 2005).  If those allegations and facts suggest a possibility of coverage, the duty to defend is triggered—even if "the precise causes of action pled by the third-party complaint . . . fall outside policy coverage."  *Id.*

AutoDistributors' insurance policy covers "personal and advertising injury," defined to mean injury "arising out of" a specified list of offenses.  As relevant here, those offenses include "[t]he use of another's advertising idea in your 'advertisement'" and "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"[1]  The policy excludes "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" (the "IP Exclusion").[2]  The policy further provides that the IP Exclusion "does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan."

1. Some of Sixt's allegations clearly fell outside the policy's coverage.

---

[1] The definition of "personal and advertising injury" also includes injury arising out of: "[f]alse arrest, detention or imprisonment;" "[m]alicious prosecution;" "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;" "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;" and "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."

[2] The exclusion also states that "other intellectual property rights" do not include the "use of another's advertising idea in your 'advertisement.'"

22-16445

Sixt alleged that AutoDistributors breached the Franchise Agreement by "operating the unauthorized Used Car Sales Business at the Store" and "using the Store to facilitate a start-up incubator business." That alleged conduct did not implicate any of the offenses in the definition of "personal and advertising injury," so it did not trigger the duty to defend.

2. Sixt also alleged that AutoDistributors infringed Sixt's trademarks by using the trademarks in connection with the used car business. Based on these allegations, Sixt alleged claims of trademark infringement and false designation of origin under the Lanham Act, common law trademark infringement, and common law unfair competition. This theory was also part of Sixt's breach of contract claim because Sixt argued that the Franchise Agreement restricted the use of the trademarks.

Even assuming that trademark infringement would constitute a "personal and advertising injury," there is no coverage for these claims because of the policy's IP Exclusion. That exclusion provides that the policy does not cover "personal and advertising injury" arising out of the infringement of "trademark."

3. AutoDistributors argues that the duty to defend was still triggered because the Sixt Complaint included allegations about other "personal and advertising injuries" beyond just trademark infringement. It first argues that the Sixt Complaint, liberally construed, also alleged the use of Sixt's copyright, trade

dress, and slogans. But the Sixt Complaint described AutoDistributors' use of Sixt's trademarks, only—it included no allegations suggesting that AutoDistributors infringed any Sixt copyright or trade dress. Although the Sixt Complaint used the word "slogan" once, that single word did not trigger the duty to defend when read in context. *See Total Call Int'l Inc. v. Peerless Ins. Co.*, 104 Cal. Rptr. 3d 319, 327 (Ct. App. 2010) ("The fact that the third party complaint mentions an element of a covered claim does not trigger the duty to defend when the facts known to the insurer, viewed as a whole, establish that no such claim is potentially asserted.").[3] The word "slogan" appeared in a sentence stating that AutoDistributors' "use and display of the Sixt Marks or any items associated with the SIXT® . . . slogans in connection with the operation of the Used Car Sales Business" caused consumer confusion. But AutoDistributors points to no allegation in Sixt's Complaint describing AutoDistributors' use of items associated with Sixt's slogans, as opposed to Sixt's trademarks, nor has it explained why the use of an item associated with a slogan would qualify as infringement of a slogan within the meaning of the policy.

Finally, AutoDistributors argues that the Sixt Complaint, liberally construed, could be interpreted to include a claim for the use of Sixt's "advertising ideas." In

---

[3] A screenshot of AutoDistributors' website, attached as an exhibit to the Sixt Complaint, does say, "reliable | *fast* | agile," but even assuming that is a slogan, there is no indication that it is one of Sixt's slogans.

5

support of this argument, AutoDistributors cites a declaration from Steven Schneider stating that AutoDistributors adopted Sixt's advertising and marketing materials, including by creating "an electric scooter to rent and sell to [AutoDistributors'] customers, which utilized Sixt's distinctive orange and black color scheme and one of its slogans—'Feel the Motion.'" But those facts are nowhere in the Sixt Complaint, and AutoDistributors has not explained why they would have been "otherwise known" to Scottsdale.[4] An insured "may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 44 Cal. Rptr. 2d 272, 277 (Ct. App. 1995); *see also id.* ("[T]he extrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit.").

**AFFIRMED.**

---

[4] AutoDistributors argues that these facts were "entirely available to Scottsdale," but the Sixt Complaint included no indications that there were any other personal and advertising injuries, nor did it even contain the word "scooter." When a complaint suggests no "conceivable theory" under which there could be coverage and the insured has not provided any extrinsic facts suggesting as much, an insurer need not go beyond the complaint to search for the possibility of such coverage. *Am. Int'l Bank v. Fid. & Deposit Co.*, 57 Cal. Rptr. 2d 567, 574–75 (Ct. App. 1996) (quoting *Gray*, 419 P.2d at 176 n.15).

22-16445